ARTHUR RUTENBERG HOMES, INC.,
Plaintiff–Counter–Defendant–
Appellant,

v.

DREW HOMES, INC., a Florida Corporation, Andrew J. Vecchio, Jr., Defendants–Counter–Claimants–Appellees.

No. 93–3267.

United States Court of Appeals,
Eleventh Circuit.

Aug. 29, 1994.

Frank R. Jakes, Tampa, FL, for appellant.

David L. Partlow, Tampa, FL, for appellees.

Before TJOFLAT, Chief Judge, DYER and HILL, Senior Circuit Judges.

HILL, Senior Circuit Judge:

This case presents an issue of copyright law. Appellant Arthur Rutenberg Homes, Inc. ("Rutenberg"), filed a complaint against Drew Homes, Inc. ("Drew Homes"), and its president and sole shareholder, Andrew J. Vecchio, Jr. Rutenberg claimed copyright infringement and common law unfair competition arising out of Drew Homes' use of certain architectural drawings and plans on which Rutenberg claimed to hold the copyright. Drew Homes counterclaimed alleging

trade defamation and seeking a declaratory judgment that Rutenberg's copyright was invalid. The case ultimately proceeded to trial on Rutenberg's copyright infringement claim and Drew Homes' counterclaim for declaratory relief.

The case was tried, by agreement, before a United States Magistrate Judge who found that Rutenberg did not own a valid copyright at the time of the alleged infringement. 829 F.Supp. 1314. For the following reasons, we reverse.

### The Creation of the Copyright

The undisputed facts are that in 1987, Chrysalis Homes Associates ("Chrysalis") engaged an architectural firm, the Heise Group, Inc. ("Heise"), to prepare for Chrysalis original architectural drawings of single family homes. At that time, Chrysalis and Heise verbally agreed that any resulting architectural drawings would be owned by Chrysalis.

Pursuant to this agreement, Heise created an architectural drawing entitled the "Verandah II" on which, as agreed, Heise placed a copyright notice identifying Chrysalis as the copyright owner. On March 21, 1988, Chrysalis secured a Certificate of Copyright Registration on the "Verandah II" drawings. The copyright registration identified Chrysalis as both the author of the drawings, by "work-for-hire," and the copyright claimant. Chrysalis' claim of authorship by "work-for-hire" apparently reflected the common practice at the time where drawings were created for an employer by an "independent contractor."

Two years later, the Eleventh Circuit decided in *M.G.B. Homes Inc., v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir.1990), that the "work-for-hire" doctrine does not confer authorship upon the home builder employer of the independent contractor who creates home floor plans. Chrysalis realized then that Heise was the author, and, therefore, original copyright owner of the "Verandah II" plans.

Shortly thereafter, Chrysalis secured a written "Certificate of Release" from Heise reciting and confirming that Heise had, from the beginning, assigned all of its rights, interest and ownership in the copyright for the "Verandah II" plans to Chrysalis.

Subsequently, Chrysalis wound up its business and sold its "Verandah II" plans to the Arthur Rutenberg Corporation ("ARC"). On February 19, 1990, Chrysalis assigned its copyright in the "Verandah II" plans to ARC. The written copyright assignments for the "Verandah II" plans from Heise to Chrysalis and from Chrysalis to ARC were duly recorded in the United States Copyright Office. As part of a corporate reorganization, ARC assigned all of its copyrights, including "Verandah II", to Rutenberg on January 1, 1991. This assignment was also recorded in the copyright office.

Rutenberg's claim for copyright infringement arises out of Drew Homes' alleged use of the "Verandah II" plans in preparing its own architectural drawings for a house constructed by it in 1991.

While this action was pending, Rutenberg applied for and received from the copyright office a Certificate of Supplementary Copyright Registration correcting the original "Verandah II" copyright registration to reflect Heise as the author, and Chrysalis as owner by assignment, and not the author by "work-for-hire".

### The Ownership of the Copyright

██ The original owner of the copyright in the "Verandah II" drawings was Heise, the author. Heise was the owner because the Copyright Act of 1976 provides that ownership vests in the author (Heise) as the party who actually creates the work. 17 U.S.C. § 201(a). *M.G.B. Homes* made clear that Chrysalis did not obtain ownership under the "work-for-hire" doctrine.

It is uncontroverted, however, that Heise and Chrysalis entered into an oral agreement that Heise would prepare these plans for Chrysalis, and that the copyright in the "Verandah II" plan would be owned by Chrysalis. Heise, in fact, placed a copyright notice on the drawings identifying Chrysalis as the copyright owner. At this point, Chrysalis held, at least, a contractual right by oral

assignment to the copyright in the "Verandah II" drawings.

Copyright ownership, however, can be conveyed only by a writing signed by the owner of the copyright. 17 U.S.C. § 204(a) provides:

A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

Chrysalis, therefore, could have become the owner of the copyright only if there were such a writing.

There is no dispute that a "Certificate of Release" was signed by Heise in early 1990, or that there were subsequent written assignments of the "Verandah II" copyright from Chrysalis to ARC, dated February 19, 1990 and from ARC to Rutenberg, effective January 1, 1991. All these writings satisfy Section 204(a)'s requirement for a writing and were recorded in the copyright office prior to the allegedly infringing acts.

Despite these written assignments of ownership, however, the trial court concluded that Rutenberg "loses on its copyright claim solely because it did not own a valid copyright at the time of the suggested infringement." The trial court based its conclusion on the following analysis: only the copyright owner can register a copyright. Since Chrysalis was not the author of the "Verandah II" drawings (M.G.B. Homes, Inc.), it was not entitled to register the copyright at all, since at the time of registration it was not the owner of the copyright, there being no written assignment prior to registration. Therefore, the registration was void from the beginning.

The trial court appears, however, to have extended *M.G.B. Homes, Inc.,* beyond its holding that the "work-for-hire" doctrine does not confer authorship upon the employer of an independent contractor. It does not hold that actual ownership, mistakenly registered as authorship resulting from "work-for-hire," may not be shown by assignment from the independent contractor author.

Indeed, in *M.G.B. Homes, Inc.,* no basis for ownership was asserted except "work-for-hire." In that case, if the party claiming ownership did not acquire that ownership as the result of "work-for-hire," that party had no other basis on which to assert ownership. In this case, however, Chrysalis was the owner of a contractual right in the copyright by assignment from the beginning. Its subsequent registration of that copyright merely contained a statement, erroneous after *M.G.B. Homes, Inc.,* of how it came to acquire that ownership.

But certainly, if registration does not confer copyright, neither can erroneous registration take it away. Copyright ownership and the effect of mistaken copyright registration are separate and distinct issues.

■ Copyright inheres in authorship and exists whether or not it is ever registered. The Copyright Act makes clear that registration is a separate issue from the existence of the copyright itself:

**Section 408. Copyright Registration in General.**

(a) REGISTRATION PERMISSIVE.—At any time during the subsistence of copyright in any published or unpublished work, the owner of a copyright or of any exclusive right in the work may obtain registration of the copyright.... *Such a registration is not a condition of copyright protection.*

(emphasis supplied); *see also* M. Nimmer & D. Nimmer, 3 *Nimmer on Copyright* § 7.16[A], (1992).

Unlike the claimant in *M.G.B. Homes,* Rutenberg's claim to ownership of the copyright is not that the plans were created as a "work-for-hire," but rather that they were assigned by the original author to Chrysalis and subsequently to ARC and then to it. As there is no dispute that these assignments did occur, and in writing, all prior to the alleged infringement by Drew Homes, we conclude that Rutenberg did *own* a valid copyright at the time of the alleged infringement.

*The Effect of the Inaccurate Registration*

■ Copyright registration is a pre-requisite to the institution of a copyright infringement lawsuit. 17 U.S.C. § 411(a) provides that "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made...." Furthermore, as noted above, only the copyright owner may apply for registration. *See* 17 U.S.C. § 408(a). Therefore, the dispositive issue in this case is whether Chrysalis was the owner of the "Verandah II" copyright *at the time of the original registration in 1988* so that the registration had legal effect. If so, then Rutenberg as a valid subsequent assignee could bring this action to enforce its copyright on the original registration. If not, then despite being the owner of the copyright, Rutenberg would not hold a valid registration and could not bring this action.[1]

Resolution of this issue requires that we inquire when Chrysalis obtained ownership of the copyright in the "Verandah II" plans. Was ownership transferred in 1988 upon the execution of the "Verandah II" plans pursuant to the agreement between Chrysalis and Heise to create the plans with the express understanding and agreement that Chrysalis would own the copyright? Or did Chrysalis obtain ownership only in early 1990, well after the initial registration of the copyright, when Heise executed a written memorandum of this agreement, as required by 17 U.S.C. § 204(a)?[2]

Many courts have held that the requirements of 17 U.S.C. § 204(a) can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer. In *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,* 697 F.2d 27 (2d Cir.1982) the Second Circuit reasoned that:

[S]ince the purpose of the provision is to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses, the "note or memorandum of the transfer" need not be made at the time when the license is initiated; the requirement is satisfied by the copyright owner's late execution of a writing which confirms the agreement.... *In this case, in which the copyright holder appears to have no dispute with its licensee on this matter, it would be anomalous to permit a third-party infringer to invoke this provision against the licensee.*

*Id.* at 36 (citations omitted) (emphasis added).

Every court which has considered the issue has arrived at the same result. *See e.g., Valente–Kritzer Video v. Pinckney,* 881 F.2d 772 (9th Cir.1989) *cert. denied* 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990); *Great Southern Homes, Inc. v. Johnson & Thompson Realtors,* 797 F.Supp. 609 (M.D.Tenn. 1992); *Kenbrooke Fabrics Inc. v. SoHo Fashions, Inc.,* 690 F.Supp. 298 (S.D.N.Y. 1988). *Accord* M. Nimmer & D. Nimmer, 3 *Nimmer on Copyright* § 10.03[A], at 10–36 (1992).

In a case closely on point with this case, *Dan–Dee Imports, Inc. v. Well–Made Toy Mfg. Corp.,* 524 F.Supp. 615 (E.D.N.Y.1981), the defense was raised that plaintiff's copyright registration was ineffective since it was secured prior to the execution of a written memorandum of transfer from the author. The district court in a well-reasoned opinion rejected this argument:

Furthermore, the regulations respecting registration do not clearly preclude issuance of a copyright to an applicant who has only received oral assignment prior to the registration since a "claimant" includes "a person or organization that has obtained ... *the contractual right* to claim legal title to the copyright in an application for

---

1. There is some question whether, if the initial registration were void, Rutenberg's supplementary registration would permit this action to go forward. The magistrate held that the supplementary registration was ineffective because he interpreted the statute not to permit ownership claims to be modified by supplementary registration. We decline to address this issue since we need not do so in order to resolve this appeal.

2. We do not decide, because we need not, whether the earlier "writing"—Heise's placement on the Verandah II plans of a copyright notice stating Chrysalis was the owner—was sufficient to satisfy the statute's requirement for a writing.

copyright registration." 37 C.F.R. § 202.-3(a)(3)(ii) n. 1 (emphasis added).

.  .  .  .  .

Accordingly, this Court holds that Dan-Dee was not required to have written evidence of the transfer from [the author] as a prerequisite to the issuance of copyright registration for the [copyrighted work], although such proof would, of course, be necessary on its copyright infringement claim.

*Id.* at 618–19.

The regulation relied upon by the court in *Dan–Dee Imports* remains in full force and effect. *See* 37 C.F.R. § 202.3(a)(3)(ii) n. 1 (1993). Since we have previously concluded that Chrysalis had at least a contractual right to legal title to the copyright at the time of its original copyright registration, it was a proper claimant under the regulation, and its registration, therefore, was valid.

This result is consistent with Section 204(a)'s allowance for a "note or memorandum of the transfer" in lieu of a formal "instrument of conveyance" which one court has noted "apparently codifies the judge made rule under the 1909 Act that if a prior oral grant is subsequently confirmed in writing, this will validate the grant *ab initio* as of the time of the oral grant." *Great Southern Homes, Inc. v. Johnson & Thompson Realtors,* 797 F.Supp. at 612.

This Court today adopts the reasoning of the cases cited above and holds that Chrysalis was not required to have written evidence of the assignment from Heise as a prerequisite to application for and the issuance of a valid copyright registration. Therefore, in this case, Chrysalis effectively registered its copyright on the "Verandah II" drawings in March of 1988, and its subsequent assignee Rutenberg both owned the copyright in and held a validly registered copyright on the "Verandah II" plans at the time of the alleged infringement.

While the trial court appears to have felt that Drew Homes did copy the "Verandah II" plans, he did not address that issue squarely because, having concluded that Rutenberg did not own a valid copyright at the time of the infringement, he did not think it necessary. The trial court has heard the evidence and can, we anticipate, make findings on the infringement issue without further proceedings. The judge may wish to hear from counsel on the issue.

The judgment is VACATED and the case is REMANDED for further proceedings.