

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-9-1999

# Raquel v Education Mgmt Corp

Precedential or Non-Precedential:

Docket 98-3321

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Raquel v Education Mgmt Corp" (1999). *1999 Decisions.* Paper 301.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/301

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 9, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3321

RAQUEL, a partnership

v.

EDUCATION MANAGEMENT CORPORATION;
ART INSTITUTES INTERNATIONAL, INC.;
GEFFEN RECORDS INC.; NIRVANA, a partnership;
ELIAS/SAVION, INC.; PHILIP ELIAS, Individually

RAQUEL,
        Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 96-cv-02349)
District Judge: Hon. Donald J. Lee

Argued: April 5, 1999

Before: SLOVITER, ALITO and ALARCON,* Circuit Judges

(Filed November 9, 1999)

        Kim M. Watterson (Argued)
        Richard M. Smith
        Matthew H. Meade
        Katarincic & Salmon
        Pittsburgh, PA 15222

         Attorneys for Appellant
_____

* Hon. Arthur L. Alarcon, Senior Judge, United States Court of Appeals
for the Ninth Circuit, sitting by designation.

Dennis J. Mulvihill
Thomas J. Farnan (Argued)
Robb, Leonard & Mulvihill
Pittsburgh, PA 15219

 Attorneys for Appellees
 Education Management Corp. and
 Art Institutes International, Inc.

Elizabeth L. Rabenold
Michael J. Kline
Stuart C. Gaul, Jr.
Thorp, Reed & Armstrong
Pittsburgh, PA 15222

 Attorneys for Appellees
 Geffen Records Inc. & Nirvana

Thomas C. Wettach (Argued)
Gerald J. Iwanejko, Jr.
Titus & McConomy
Pittsburgh, PA 15222

 Attorneys for Appellees
 Elias/Savion, Inc. &
 Philip Elias, Individually

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Before us is an appeal from the order of the District Court dismissing for lack of subject matter jurisdiction this copyright infringement action filed by appellant Raquel. The court based its decision on Raquel's failure to show registration of its copyright claim in accordance with the Copyright Act, which is a prerequisite for the filing of an action for infringement. 17 U.S.C. S 411(a).

I.

Raquel is a partnership comprising musicians and songwriters who authored the music, lyrics, and arrangement for an original song entitled "Pop Goes the

2

Music" ("the Song"). Raquel granted defendants Elias/Savion Advertising Agency, Inc. ("Elias/Savion") and Education Management Corporation ("EMC"), a license to use the Song and Raquel's performance for three years in a television commercial produced by Elias/Savion that advertised the educational programs offered by Art Institutes International (an entity operated by EMC). As compensation for its license of the Song and its performance, Raquel received a separate, full-length music video of some four minutes' duration. Like the commercial, the video was produced by Elias/Savion.

In July 1995, Raquel, through counsel, filed a federal copyright registration form with the Register of Copyrights. It identified the nature of the work for which copyright registration was sought as an "Audiovisual Work," the title of the work as "Pop Goes the Music," and the nature of authorship as "All music and lyrics and arrangement." App. at 48. Raquel deposited with the application a videotape apparently containing both the commercial and the full-length music video.

In October 1995, Raquel filed a copyright infringement action under the Copyright Act, 17 U.S.C. S 101, in the United States District Court for the Western District of Pennsylvania against EMC, Geffen Records, and the music group Nirvana. Raquel alleged in its complaint that EMC violated the licensing agreement by continuing to run the commercial beyond the three-year period provided for in the agreement and that EMC, acting through Art Institutes International, infringed its copyright by entering into an agreement with defendants Geffen and Nirvana for the use of a portion of the commercial containing the Song"Pop Goes the Music" in a music video for Nirvana. EMC then filed a third-party complaint against Elias/Savion seeking indemnification and/or contribution for any liability it may have had toward Raquel.

On motion of Elias/Savion, the District Court dismissed the complaint against all defendants for lack of subject matter jurisdiction. Raquel v. Education Mgmt. Corp., 955 F. Supp. 433 (W.D. Pa. 1996).1 The court noted that in the

_____

1. The complaint, which is not in the appendix, is quoted in the District Court's first opinion. See Raquel, 955 F. Supp. at 439.

3

complaint Raquel alleged that the "musical video and TV commercial (hereinafter referred to as the `Subject Work'), upon being fixed in the tangible medium of a videotape, was published by [Raquel] with a notice of copyright on February 20, 1991" and that the work "contains material wholly original in [Raquel] that is copyrightable subject matter." Id. at 439. The court then noted that Raquel had registered the copyright as an "audiovisual work" entitled "Pop Goes the Music," whereas Mr. Elias of Elias/Savion, not Raquel, was the acknowledged author of the commercial and music video. Id. at 438. Raquel therefore did not have a copyrightable interest in the work that formed the basis of its lawsuit because it was undisputed that Elias/Savion was the sole author of the audiovisual. Id. at 439. The court concluded that because the complaint based the infringement claim upon the commercial (in which Raquel had no interest) and not upon the musical work, it had no subject matter jurisdiction and would grant the motion to dismiss. Id. at 440.

The District Court nonetheless denied attorneys fees to Elias/Savion. The court, which had previously stated that "the term `Audiovisual Work' was inadvertently included," id. at 439, stated that Raquel has a "copyrightable interest" in the Song, and "did not knowingly fail to advise the copyright office of facts which might have led to the rejection of its registration application." Id. at 440.

On December 2, 1996, after the dismissal of its first complaint, Raquel's counsel filed a supplemental registration form with the Copyright Office. This document added "performance of song Pop Goes the Music" to the description of the nature of the authorship in the earlier registration, but made no other changes. App. at 67. On December 20, 1996, Raquel, again through counsel, filed yet another supplemental registration form. In this form, Raquel sought to "amplify" line one of the registration form, that describing the "nature of the work," by filing two copies of the video of Raquel performing the Song. By way of explanation, Raquel stated on the form: "Original filing was made with videocassette which contained `Video' of RAQUEL performing song, `Pop Goes the Music', and also contained other items as to which claimant does not assert copyright." App. at 55.

4

The following week, Raquel filed a second copyright infringement action against the same defendants who were named in the first complaint. The second complaint made essentially the same factual allegations, but asserted that the copyright that was the subject of the infringement was Raquel's copyright in the Song. The defendants moved to dismiss for lack of subject matter jurisdiction, asserting, inter alia, that Raquel's copyright registration was insufficient to support jurisdiction for an action alleging infringement of its copyright in the Song.

The District Court initially denied the defendants' motion. On the defendants' motion for reconsideration, the court, approving and adopting a report and recommendation from the Magistrate Judge, granted the motion and dismissed the case. The District Court's dismissal was based on its conclusion that neither Raquel's copyright registration nor its supplemental registration was sufficient to confer jurisdiction in an action for infringement of the Song. Raquel timely appealed.

II.

The Copyright Act provides: "[N]o action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. S 411(a). Thus, the issue is whether Raquel has met the jurisdictional prerequisite for maintaining a copyright infringement action, namely a valid registration in the work that has allegedly been subject to an infringing use. Our review of the District Court's dismissal for lack of subject matter jurisdiction is plenary. See Singh v. Daimler-Benz AG, 9 F.3d 303, 305 (3d Cir. 1993).

A.

We first confront Raquel's argument that the District Court erred in failing to adhere to its determination in the first lawsuit "that the 1995 Registration was a valid registration of the Song." Appellant's Br. at 25. There is language in the District Court's 1996 opinion which, standing alone, might lead one to conclude that the District

5

Court opined that Raquel did have a registered copyright in its Song despite its description of the work as an "Audiovisual work." At one point in its opinion, the court stated that the inclusion of the term "Audiovisual Work" in the application "did not invalidate the copyright of the music and lyrics to the song `Pop Goes the Music';" id. at 439, and at another point stated that Raquel "had a copyrightable interest in the [Song];" id. at 440 (emphasis added). The District Court stated that the characterization as an audiovisual work was inadvertent, and then stated, "[A]n innocent omission or inclusion in a registration will not invalidate the copyright or render it incapable of supporting an infringement action." Id. at 439. However, because the District Court dismissed the case for want of jurisdiction on the ground that Raquel had only pleaded a copyright interest in the commercial and the video, in which Raquel had no copyrightable interest, and the case before it raised the issue of the validity of the registration of the audiovisual work, its statement suggesting that the registration was valid vis-a-vis the Song was not necessary to the decision and is at most dictum. It did not, therefore, bind the District Court in this case, which is a new lawsuit with a separate civil action number. Of course, as the first dismissal was never appealed to this court, any statement or inference raised by the District Court could not bind us.

We note parenthetically that both the magistrate judge and the district court judge in this case are, respectively, the judges who recommended dismissal and who dismissed the first complaint. Consequently, although we appreciate why Raquel might have drawn the opposite conclusion, we conclude that the issue whether Raquel had a registered copyright in the Song was not decided. We turn then to that question, which is central to the District Court's subject matter jurisdiction in this case.

B.

Although a failure properly to register a work does not invalidate the copyright itself, it does preclude the maintenance of an infringement action until such time as the purported copyright holder obtains a valid registration. See Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc., 29

6

F.3d 1529, 1531-32 (11th Cir. 1994); 17 U.S.C. S 411(a); Melville B. Nimmer & David Nimmer, 2 Nimmer on Copyright SS 7.16[A][1], 7.16[B] (1997) [hereinafter Nimmer & Nimmer].

Raquel contends that its initial registration -- in which it characterized the nature of the copyrighted work as an "Audiovisual Work" -- and its supplemental registration -- in which it added description of the nature of the authorship -- are sufficient to invoke the subject matter jurisdiction of the federal courts. Raquel presses this contention on two fronts. First, it urges that its 1995 registration is sufficient, despite its imprecision, to support an infringement action based upon its Song. Second, Raquel argues that its performance of the Song is itself a copyrightable interest, and that its initial and supplemental registration forms together constitute a valid registration that would support a lawsuit charging infringement of Raquel's copyright in the performance of the Song. We address these arguments in turn.

C.

Raquel contends that its designation of the nature of its work as an "Audiovisual Work" in its copyright registration should not bar it from bringing this infringement action for infringement of the Song because the designation was merely an inadvertent and immaterial error. In pressing this argument, Raquel places considerable reliance on our decision in Masquerade Novelty, Inc. v. Unique Industries, Inc., 912 F.2d 663 (3d Cir. 1990). In that case, the plaintiff Masquerade, a manufacturer of novelty masks, claimed infringement of its copyright in its nose masks (specifically, pig, elephant and parrot nose masks). The district court granted summary judgment to the defendant, ruling, inter alia, that Masquerade had omitted material facts from its copyright registration. On appeal, the defendant, a competing seller of nose masks, urged that Masquerade did not hold valid copyrights because it failed to specify that the masks were to be worn by humans. It contended that the omitted information would have led the Copyright Office to have declined to issue the registrations (apparently on the assumption that the Register of Copyrights would have

7

found the masks to be costumes, which are not copyrightable).

On appeal, we determined that the supposed omission was immaterial because the applications identified the articles as "nose masks." In doing so, we acknowledged that "[i]t has been consistently held that a plaintiff's knowing failure to advise the Copyright Office of [material] facts . . . constitutes grounds for holding the registration invalid and incapable of supporting an infringement action." Id. at 667. However, because we concluded that the omission was not a material one, we held it unnecessary to decide "whether an inadvertent omission of material information from a submission to the Copyright Office renders the copyright unenforceable, deprives the copyright owner of its S 410(c) presumption [of validity], or has no legal effect." Id. at 668. We nonetheless observed in a footnote that the "view that an inadvertent omission from a registration application will render a plaintiff's copyright incapable of supporting an infringement action has not gained acceptance with the courts," and also stated that "[i]t may be that the correct approach in situations where there has been a material, but inadvertent omission, is to deprive the plaintiff of the benefits of S 410(c) [incontestability after five years] and to require him to establish the copyrightability of the articles he claims are being infringed." Id. at 668 n.5.

Hence, our opinion in Masquerade supports the general proposition that an inadvertent and immaterial misstatement will not invalidate a copyright registration, a proposition on which there is broad consensus in the federal courts. See, e.g., Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1161 (1st Cir. 1994); Eckes v. Card Prices Update, 736 F.2d 859, 861–62 (2d Cir. 1984). Less clear, however, is the effect of a misstatement that is material but inadvertent. See Data General, 36 F.3d at 1163 ("No court has suggested that a registration premised in part on an unintentional material error would fail to satisfy the jurisdictional requirement of Section 411(a)."); Masquerade, 912 F.2d at 668 & n.5. As our discussion below will demonstrate, however, we need not decide that question for the purposes of this appeal because, on the undisputed record before the court, we cannot conclude

8

that the misstatement was immaterial and unknowingly made.

Raquel readily concedes that the designation of the nature of its work on its 1995 copyright registration form was inaccurate. It urges, however, that the designation of the nature of the work as an "Audiovisual Work" was immaterial and that in any event it was inadvertent and therefore should not bar jurisdiction over this lawsuit.

In determining the materiality of a misstatement in a copyright registration, we examine whether the inaccuracy might have influenced the Copyright Office's decision to issue the registration. See Data General, 36 F.3d at 1161 ("In general, an error is immaterial if its discovery is not likely to have led the Copyright Office to refuse the application"); Eckes, 736 F.2d at 861-62 (" `[K]nowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action' " (quoting Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc., 482 F. Supp. 980, 988 (S.D.N.Y. 1980))).

In this case, the registration identifies the work as an audiovisual work entitled "Pop Goes the Music," rather than the kind of work on which the complaint is based-- a song entitled "Pop Goes the Music." The Copyright Act defines "Audiovisual works" as "works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds." 17 U.S.C. S 101. One need have no special expertise in intellectual property law to apprehend that an audiovisual work is facially very different from a song, which would fall under the rubric of "musical works, including any accompanying words," 17 U.S.C. S 102(a)(2).

We conclude that this mischaracterization is material. Had the Register of Copyrights known that Raquel did not author the audiovisual work identified in its registration, it

9

is likely that this rather fundamental misstatement would have occasioned the rejection of Raquel's application.[2]

To be sure, there are numerous cases suggesting that many kinds of inadvertent and immaterial errors in copyright registration forms will be excused. Courts have forgiven plaintiffs for having misidentified the author of a work, see, e.g., Thomas Wilson & Co. v. Irving J. Dorfman Co., 433 F.2d 409 (2d Cir. 1970) (listed president of corporation instead of corporation); Testa v. Janssen, 492 F. Supp. 198 (W.D. Pa. 1980) (listed author's assignee), or misidentified the owner of the copyright, see Wales Indus. v. Hasbro Bradley, Inc., 612 F. Supp. 510 (S.D.N.Y. 1985) (listing as copyright claimant the exclusive licensee). The leading treatises support this view as well. See, e.g., Nimmer & Nimmer S 720[B] at 7-208 ("The courts generally have been most lenient . . . with respect to any innocent error contained in an application for a registration certificate."); 1 Paul Goldstein, Copyright S 3.12.3, at 345

_____

2. Raquel argues that the Register of Copyrights could not have been misled by the registration form because a letter from the Copyright Office dated May 14, 1997 shows the Copyright Office understood Raquel's 1995 registration stated a claim in the "music, lyrics, and arrangement" of the Song. However, this letter to Raquel's counsel, sent in response to telephone conversations between Raquel's counsel and the examiner who signed the letter, was dated nearly two years after the registration was filed and does not indicate what the Register of Copyrights would have likely done if all of the relevant facts were presented at the time of the registration. See App. at 226. In fact, the letter is ambivalent as to the nature of Raquel's claim. In the letter, the examiner states, "If your client owned all rights in the production at the time the original Form PA application was filed to register the song, you may . . . ," which suggests that the Copyright Office was not apprised of the salient fact that Raquel had not authored the commercial or video. Moreover, this document is not one that may be considered in a motion-to-dismiss setting. Although the court may consider, on a motion to dismiss, certain documents that are outside the pleadings, such as the registration form and supplemental registration forms expressly relied on in the complaint, see In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997) ("document integral to or explicitly relied upon in the complaint" may be considered when deciding motion to dismiss (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)), this letter is not such a document as it is wholly extraneous to the pleadings.

10

(1989) ("Courts have excused innocent errors or omissions affecting virtually every material aspect of a copyright registration application.").

However, Raquel has not cited, nor have we found, a case in which the misstatement to be excused is as fundamental as the one in this case. Here, Raquel misidentified the nature of the work in such a way as to suggest an attempted registration in a work not authored by the registrant, namely, the commercial advertisements authored, as the parties agree, by Elias/Savion.3 In all of the cases excusing immaterial errors the registrant had the right to the work described in the registration form. Raquel, however, does not have the right to the audiovisual work described in the registration form.

Raquel points to Urantia Foundation v. Maaherra, 114 F.3d 955 (9th Cir. 1997), and Harris v. Emus Records Corp., 734 F.2d 1329 (9th Cir. 1984), as instances where courts have forgiven registrants for misidentifying a work. We find both inapposite. Neither involves misidentification of a type or degree that is equivalent to that presented in the case at bar. In Urantia, the court considered the validity of a copyright renewal form in which the applicant referred to itself as "the proprietor of a work made for hire" rather than, more accurately, "the proprietor of a composite work." 114 F.3d at 962. The court concluded that the misidentification of "a particular type of proprietorship" did not affect the validity of the copyright renewal. Id. at 962. There was no question as to the fundamental nature of the work itself, which was in that case a book believed to have been "authored by celestial beings and transcribed, complied and collected by mere mortals." Id. at 956. Hence, the imprecision excused by the court in Urantia was not, as in the present case, one that presented any likelihood of confusion as to the work for which copyright protection was sought.

_____

3. Raquel relies heavily on the fact that the registration form identified the "nature of the authorship" as "all music, lyrics, and arrangements" but we find that this characterization of the nature of the authorship adds only ambiguity rather than clarity to the registration form. We cannot conclude that this ambiguity cures the misstatement as to the nature of the work being registered.

11

Nor does the Ninth Circuit's decision in Harris offer support for Raquel. In Harris, the court determined, as a "subsidiary issue[ ]," that a registration form incorrectly identifying singer Emmylou Harris as the author of a work did not bar Harris's infringement suit where subsequent transfers resulted in Harris's ownership of the copyright before suit was instituted and the defendant showed no prejudice from the misidentification of the author. 734 F.2d at 1335. Thus, Harris, like Urantia, did not involve a registration form that purported to register a copyright in a work other than the one on which the infringement suit was based.

Consequently, despite the generally accommodating stance taken where the misstatement in the registration form does not go to the nature of the work for which protection is sought, we find in this case a serious imprecision in identifying the work itself. A copyright registration that misidentifies the nature of a copyrighted work fails to give proper notice to the Register of Copyrights regarding the nature of the intellectual property for which protection is sought. As a result, it is not unreasonable to demand some accuracy on this matter.

D.

We also cannot find on this record that the misstatement in the registration form was an innocent error. Defendants argue, and we agree, that there is no record evidence that the misstatement was inadvertent. It would be difficult to draw the inference of inadvertence from this record. Counsel for Raquel (who is not counsel in this appeal) executed the registration form on Raquel's behalf on July 18, 1995, denoting the nature of the work as an "Audiovisual Work." The same attorney thenfiled the first infringement action on October 11, 1995, identifying the work forming the basis of Raquel's infringement claim as the commercial and the video, both clearly audiovisual works. See Raquel, 955 F. Supp. at 440. It is difficult to conclude that an attorney who executed a registration form for an "Audiovisual Work" and then proceeded to file a complaint alleging that the defendants infringed Raquel's

12

copyright in audiovisual works intended the copyright to cover the Song.

Furthermore, as the complaint alleges, the Song was authored in 1990, although the video and commercials were created in 1991. The registration form identifies the year in which creation of the work was completed as 1991, the year in which the video and commercials were produced, which further suggests that the work for which registration was sought in 1995 was the video and commercials, as the registration form itself indicated, rather than the Song itself. Nor did Raquel, after the dismissal of its first suit, file a new copyright registration form that correctly identified the nature of the work for which it sought copyright as a musical work or song before instituting an infringement action based upon the Song.

Based on the information on record, we cannot conclude that the inaccuracy in Raquel's 1995 registration was either immaterial or inadvertent. Raquel filed a registration form suggesting authorship of an audiovisual work in which it had no copyrightable interest. Although we need not go as far as did the court in Whimsicality, Inc. v. Rubie's Costume Co., 891 F.2d 452 (2d Cir. 1989), which labeled as "fraud on the Copyright Office" a registration for what proved to be plaintiff's Halloween costumes (which are not entitled to copyright protection) which plaintiff had described on its application as "soft sculptures" (which are entitled to copyright protection),4 the fact remains that Raquel filed a registration form suggesting authorship of an audiovisual work in which it had no copyrightable interest. There is a

_____

4. On a subsequent Rule 60(b)(3) motion, the District Court in Whimsicality, Inc. v. Rubie's Costume Company, 836 F. Supp. 112 (E.D.N.Y. 1993), considered an affidavit by the section head of the Copyright Office in which he stated that the "description of the works as a soft sculpture did not and does not constitute a representation to the Copyright Office that the works in question have no useful function [the issue in that case]." Id. at 115. Based on that affidavit, the court reversed its earlier position and held the Copyright Office had not been misled. The letter from a copyright examiner submitted by Raquel in this case as part of its objections to the magistrate judge's initial report and
recommendation, see note 2 supra, is not comparable to the affidavit submitted in Whimsicality.

13

fundamental difference between an audiovisual work and a song. We conclude therefore that the 1995 copyright registration could not serve as the jurisdictional basis for this suit notwithstanding that this complaint, unlike the first, sues for infringement of the Song.

E.

Raquel's second argument is that it has, by means of its supplemental registration, a registered copyright in Raquel's performance sufficient to invoke the court's subject matter jurisdiction on a claim that the defendants infringed its copyright in that performance.

There is no doubt that one can have a copyrightable interest in a particular performance of a song. See, e.g., Woods v. Bourne Co., 60 F.3d 978, 983 (2d Cir. 1995) ("[P]erformances include television broadcasts of the Song as captured in movies and television programs and radio broadcasts of the Song as captured in sound recordings."); Daboub v. Gibbons, 42 F.3d 285, 288 (5th Cir. 1995) ("The distinction may be summed up as the difference between a copyright in a Cole Porter song and a copyright in Frank Sinatra's performance of that song. The former would be a musical work copyright and the latter would be a sound recording copyright, although both may be embodied in the same phonorecord." (quoting 1 M. Nimmer, Copyright S 4.06, p. 4-34 n.1)). However, once again Raquel founders because it has not demonstrated that it has registered a copyright in its performance so as to satisfy the jurisdictional requirement of 17 U.S.C. S 411(a).

Raquel's interest in its performance was not decided in the first action. The court did note that Raquel had not applied for nor received a copyright of its performance of the Song and stated that it would make no determination regarding Raquel's right to copyright its performance. Raquel, 955 F. Supp. at 440. Assuming that Raquel has a copyrightable interest in the performance of the Song as captured on the video, we must decide whether Raquel's supplemental registration is sufficient to register a copyright in the performance, when the initial registration was for an "Audiovisual Work," and, if so, whether Raquel's

14

complaint has alleged an infringement of its performance of its Song.

Raquel's attempt to use its supplemental registration as a basis for asserting a claim that the defendants infringed its copyright in its performance rests on an erroneous understanding of the function of supplemental registration. The applicable regulation governing supplementary registration states:

> (2) Supplementary registration may be made either to correct or to amplify the information in a basic registration. For the purposes of this section:
>
> (i) A "correction" is appropriate if informa tion in the basic registration was incorrect at the time that basic registration was made, and the error is not one that the Copyright Office itself should have recognized;
>
> (ii) An amplification is appropriate:
>
> (A) To supplement or clarify the information t hat was required by the application for the basic registration and should have been provided, such as the identity of a co-author or co-claimant, but was omitted at the time the basic registration was made, or
>
> (B) To reflect changes in facts, other than those relating to transfer, license, or ownership of rights in the work, that have occurred since the basic registration was made.
>
> (iii) Supplementary registration is not appropriat e:
>
> (A) As an amplification, to reflect a chan ge in ownership that occurred on or after the effective date of the basic registration or to reflect the division, allocation, licensing or transfer of rights in a work; or
>
> (B) To correct errors in statements or notices  on the copies of phonorecords of a work, or to reflect changes in the content of a work[.]

37 C.F.R. S 201.5(b).

15

Raquel's effort to use its supplementary registration to change the nature of the work as set forth in its original registration does not neatly fit into the concepts of "correction" or "amplification" as used in the regulation. By filing the supplemental registration, Raquel did not seek to cure "incorrect information" in the initial registration, "supplement or clarify" omitted information, or "reflect changes in facts." Rather, by means of the supplemental registration, Raquel sought to change the nature of the work for which a copyright is claimed. This attempt is more akin to the prohibited use of supplemental registration set forth in S 201.5(b)(2)(iii)(B), viz., "to reflect changes in the content of a work."

What Raquel urges is essentially that the supplemental registration should supersede the original registration. That is, rather than the "audiovisual work" for which it had registered a copyright, Raquel sought to copyright a "performance" through its supplemental registration. That such a use of the supplemental registration process is at odds with the intent of the regulation is underscored by the statutory provision enabling the regulation, 17 U.S.C. S 408(d). That section permits the promulgation of regulations allowing authors to use supplemental registration "to correct an error in a copyright registration or to amplify the information given in a registration" but clearly states: "The information contained in a supplementary registration augents but does not supersede that contained in the earlier registration."

Moreover, even if we were to assume arguendo that Raquel's supplemental registration is a sufficient ground for jurisdiction in an action for infringement of its putative copyright in the performance of the Song, Raquel's argument is undone by the wording of its complaint. Determination whether an action arises under federal copyright law is made by reference to the statement of the claim in the complaint. See Vestron, Inc. v. Home Box Office, Inc., 839 F.2d 1380, 1381 (9th Cir. 1988). "Where there is a fatal flaw on the face of a complaint that purports to assert an infringement action, the suit should be dismissed for lack of subject matter jurisdiction." Id. at 1382.

16

Raquel's complaint is barren of any allegation of an infringement of a copyright in Raquel's performance of the Song. To the contrary, the complaint alleges infringement of the Song itself, in which, as we here hold, Raquel has not registered a copyright. In paragraph 13 Raquel states that it "created the music, lyrics and arrangements for an original composition entitled `Pop Goes the Music' (hereinafter `Plaintiff's Work')." App. at 14. In paragraph 44, Raquel refers to the use of the "Plaintiff's Work" by EMC in advertising after the end of the three year period of the licensing agreement without permission from Raquel thereby infringing upon its copyright. App. at 20. Raquel states in Paragraph 53 that defendants, by virtue of entering into a "Videoshow Agreement" with Geffen and Nirvana, committed a further act of infringement of "Plaintiff's Work." App. at 22.

In short, throughout the counts of the complaint, Raquel alleges infringement of "Plaintiff's Work," which paragraph 13 defines as the music, lyrics, and arrangements of its Song, not its performance. Although the complaint includes among its factual allegations the averment that Raquel is the sole proprietor of the Song "and Plaintiff's performance of the song in an audiovisual work," App. at 18, no count of the complaint alleges a violation of that interest. Hence, even on a charitable reading of the complaint, it is not possible to construe it as alleging an infringement of Raquel's performance as distinct from its Song. Nor could it amend to so allege, as it has failed to perfect a copyright in its performance.

III.

We conclude that Raquel does not have a registered copyright in either its Song or the performance of its Song that would entitle it to bring suit. Accordingly, we will affirm the District Court's dismissal of this action for lack of subject matter jurisdiction.

17

ALITO, Circuit Judge, dissenting:

I believe that the majority's decision elevates form over substance and works a forfeiture of a valid copyright because of a misstatement that the trial court had already labeled inadvertent. I dissent for two reasons. First, the majority ignores the prior findings and holding of the District Court regarding the validity of Raquel's copyright in its song "Pop Goes the Music." These determinations were clearly the law of the case and entitled to deference. Second, as a matter of substantive law, Raquel's registration should not be deemed invalid merely because of an inadvertent mistake which caused no prejudice to the defendants in this action. There is no evidence in the record that compels a finding of fraudulent intent, and the majority's resolution of factually ambiguous issues against Raquel is inappropriate in the context of a motion to dismiss on the pleadings.

I.

The District Court's initial determination that Raquel's 1995 registration was a valid registration of the song was clearly the law of the case, and the District Court's failure, without explanation, to adhere to its earlier determination unfairly prejudiced Raquel and was in error. The majority compounds this error by itself disregarding this preclusive finding.

The District Court, in its 1996 judgment, made clear and specific findings and concluded that Raquel had validly registered its copyright in the music and lyrics of the song. Because Raquel identified the title of the work as "Pop Goes the Music" and the nature of authorship as "[a]ll music & lyrics & arrangement," the District Court found that "it is sufficiently clear that Raquel intended to obtain a copyright in its song, `Pop Goes the Music.' " Raquel v. Education Mgmt. Corp., 955 F. Supp. 433, 439 (W.D. Pa. 1996). Although the Registration incorrectly described the nature of the work as an "Audiovisual Work," the court explicitly held that "the term `Audiovisual Work' was inadvertently included in the copyright application and, as a consequence, it did not invalidate the copyright of the music

18

and lyrics to the song, `Pop Goes the Music.' " Id. (emphasis added). The District Court went on to hold that"because Raquel had a copyrightable interest in the song`Pop Goes the Music' it did not knowingly fail to advise the copyright office of facts which might have led to the rejection of the registration application." Id. at 440. Although the District Court proceeded to dismiss the case for lack of jurisdiction, this was simply because Raquel's complaint referred only to the full-length music video (in which it held no copyright), and not to the song itself (in which it clearly did). See id. Indeed, as the District Court noted in its Order of January 20, 1998:

> [t]he previous dismissal . . . [was] not based upon a finding that plaintiff's Certificate of Copyright Registration was invalid; to the contrary, Magistrate Judge Caiazza, as approved by this Court, found that certificate to be valid, despite some inadvertent errors in plaintiff's application. The dismissal was, rather, based upon plaintiff's failure to allege in the complaint any infringement of the copyrighted song, as opposed to the audiovisual material containing the song which plaintiff had not copyrighted."

App. 230 (emphasis in original). The District Court thus made three important rulings in the 1996 action, which became the law of the case: (1) that Raquel had intended to register its copyright in the song and not in the video; (2) that the inclusion of the term "Audiovisual Work" in the registration was merely inadvertent; and (3) that therefore, the registration was valid as to the music and lyrics of the song, if not to the video itself.

The majority attempts to brush aside these clear and binding determinations by characterizing them as"at most dictum." However, the District Court's findings in regard to the copyrights of the music and lyrics were essential to an important part of its judgment on the merits -- its denial of Elias/Savon's motion for attorney's fees. Elias/Savon had claimed that "an award of attorney's fees is appropriate . . . since the Plaintiff and its counsel had full knowledge of the falsity of the statement made to the copyright office at the time the copyright registration was filed." Raquel, 955 F. Supp. at 437. The Court was thus required to make a

19

concrete finding on the inadvertence issue -- with which
the issue of the copyright's validity was inextricably
intertwined -- as a predicate to resolving the attorney's fees
question. Significantly, the defendants never appealed the
Court's denial of attorney's fees, or its predicatefindings on
inadvertence and validity.

The law of the case doctrine " `expresses the practice of
courts generally to refuse to reopen what has been
decided.' " Williams v. Runyon, 130 F.3d 568, 573 (3d Cir.
1997) (quoting Messenger v. Anderson, 225 U.S. 436, 444
(1912)). Law of the case restrictions apply to "subsequent
rulings by the same judge in the same case or a closely
related one." Casey v. Planned Parenthood of Southeastern
Pennsylvania, 14 F.3d 848, 856 n.11 (3d Cir. 1994).
Although a trial judge has the power to reconsider an
earlier decision, its authority to do so is limited by two
prudential considerations: "First, the court must explain on
the record the reasoning behind its decision to reconsider
the prior ruling. Second, the court must take appropriate
steps so that the parties are not prejudiced by reliance on
the prior ruling." Williams, 130 F.3d at 573.

In the present case, neither the District Court's Order nor
the Magistrate Judge's report presents any explanation of
the decision to ignore the District Court's earlierfinding
that the registration was valid. Moreover, Raquel was
clearly prejudiced by the court's abrupt and unanticipated
about-face on this question. After the District Court
dismissed the first action without prejudice, Raquel read
the Court's decision as any reasonable plaintiff would --
that although its complaint had been defective, it
nevertheless had a valid registered copyright in the song.1
In reliance on the District Court's holding, itfiled a new
complaint which cured the pleading defects identified by
the Court, but failed to reexamine the certificate of
registration, which the Court had already determined was

_____

1. Even the majority concedes that "[t]here is language in the District
Court's 1996 opinion which, standing alone, might lead one to conclude
that the District Court opined that Raquel did have a registered
copyright in its Song despite its description of the work as an
`Audiovisual work.' "

capable of supporting an infringement claim based on the song. It was not until the District Court's reconsideration of the defendant's motion to dismiss in the second action that Raquel had any indication that the Court's earlier ruling was not what it seemed to be. However, by this point, the District Court had dismissed Racquel's claims with prejudice.

Absent the District Court's assurances on the matter, Raquel could have filed a supplementary registration under 17 U.S.C. S 408(d) in order to perfect its registered copyright in the song. Because the District Court, by its earlier ruling and expression, did not alert Raquel to its concern about the validity of the copyright in the song, Raquel was undeniably prejudiced. See Williams, 130 F.3d at 573. The District Court was thus foreclosed from revisiting its earlier, unambiguous ruling that Raquel had validly registered its copyright in the song's music and lyrics.

Collateral estoppel principles would also support this conclusion. The collateral estoppel doctrine prevents the relitigation of issues that have been decided in a previous action. Under the law of this Circuit, four factors must be met before the application of collateral estoppel is appropriate: (1) the previous determination was necessary to the decision; (2) the identical issue was previously litigated; (3) the issue was actually decided in a decision that was final, valid, and on the merits; and (4) the party being precluded from relitigating the issue was adequately represented in the previous action. See Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency, 126 F.3d 461, 475 (3d Cir. 1997). In the present case, the District Court made explicit findings as to inadvertence and validity in its decision dismissing the earlier action and refusing Elias/Savon's motion for attorney's fees. Defendants are thus precluded from relitigating these issues, and the majority has erred in holding otherwise.

II.

Even if the validity of the registration had not been foreclosed by the District Court's earlier ruling, Raquel's

21

registration was clearly sufficient, as a substantive matter, to perfect its copyright interest in the music and lyrics of the song.

"The case law is overwhelming that inadvertent mistakes on registration certificates do not . . . bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." Urantia Found. v. Maaherra, 114 F.3d 955, 963 (9th Cir. 1997).2 See also Masquerade Novelty v. Unique Indus., Inc., 912 F.2d 662, 668 n.5 (3d Cir. 1990) ("Unique's view that an inadvertent omission from a registration application will render a plaintiff's copyright incapable of supporting an infringement action has not gained acceptance with the courts."); Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1161-62 (1st Cir. 1994) ("It is well established that immaterial, inadvertent, errors in an application for copyright registration do not jeopardize the validity of the registration."); Eckes v. Card Prices Update, 736 F.2d 859, 861-62 (2d Cir. 1984) ("Only the `knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid' ") (quoting Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc., 482 F. Supp. 980, 988 (S.D.N.Y. 1980)); 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright S 7.20[B] at 7-208 ("a misstatement . . . in the registration certificate, if unaccompanied by fraud, should neither invalidate the copyright nor render the registration certificate incapable of supporting an infringement action").

The majority attempts to distinguish this long line of cases by pointing to the fact that Raquel's registration misidentified the nature of the work in question. This argument mischaracterizes the case law. No court of appeals has ever suggested that an inadvertent error in a registration statement -- even an error as to the nature of the work -- can bar an infringement action where the work

_____

2. Although the majority attempts to distinguish Urantia on its facts, the rule announced in Urantia -- and seemingly not disputed by the majority -- clearly covers the facts of the case at bar.

22

would have been copyrightable had the registration statement contained a correct statement of facts. See Masquerade Novelty, 912 F.2d at 668 n.5.3 See also 2 Nimmer & Nimmer S 7.20[B] at 7-208 n.19 (collecting cases). Indeed, in Baron v. Leo Feist, Inc., 173 F.2d 288 (2d Cir. 1949), the Second Circuit dealt with precisely the issue of misidentification of the nature of a copyrighted work in its registration. In Feist, the plaintiff's registration certificate referred only to the arrangement of the subject song. Nevertheless, the Second Circuit held that the registration was sufficient to maintain an action based on infringement of the song's melody because there was no contention that the defendants were "misled by the certificate of registration." Id. at 290.

In the present case, there is no dispute that Raquel's interest in the music and lyrics to the song were copyrightable, or that the registration would have been valid had it correctly stated the nature of the subject work. Nor is there any intimation that the defendants were at all prejudiced by the error in the registration. Clearly, the defendants in this suit, like those in Feist, were not misled by the registration as to the scope of the protected work. In light of these considerations, Raquel's inadvertent error cannot be grounds for dismissing its suit for lack of subject matter jurisdiction.

III.

The majority attempts to bolster its holding by making its own factual finding that Raquel committed a fraud on the Copyright Office. It grounds this argument in its assertion that "[i]t is difficult to conclude that an attorney who executed a registration form for an `Audiovisual Work' and

_____

3. In dictum, the Masquerade Novelty Court did suggest that "[i]t may be that the correct approach in situations where there has been a material, but inadvertent omission, is to deprive the plaintiff of the benefits of S 410(c) and to require him to establish the copyrightability of the articles he claims are being infringed." 912 F.2d at 688 n.5. Even under this somewhat more stringent standard, Raquel would be entitled to reversal of the District Court's dismissal and an opportunity to prove copyrightability before that court.

then proceeded to file a complaint alleging that the defendants infringed Raquel's copyright in audiovisual works intended the copyright to cover the song." 4

I believe that the majority, in focusing singularly on the use of the term "Audiovisual Work," has ignored the array of evidence in the record that supports a finding of inadvertence. In its 1995 copyright application, Raquel properly identified the title of the work as "Pop Goes The Music" -- not as "Before the Crowd Roars," the title of the commercial. App. 48. In the same application, Raquel identified the nature of its authorship as "[a]ll music & lyrics & arrangements" -- a clear indication of its intent to register the song and not the video. App. 48, 50. Moreover, Raquel's copyright counsel, Edward C. Terreri, stated under oath that the copyright application was filed in good faith "with no intent to seek any greater rights for RAQUEL than those to which RAQUEL is entitled," Raquel, 955 F. Supp. 433, 439 n.1 (quoting Terreri Declaration), and that he "had no intent to defraud the Copyright Office . . . or anyone else in connection with attempts to obtain copyright protection for Raquel." App. 186. These facts led the District Court itself to hold (in my opinion correctly) that the inclusion of the term "Audiovisual Work" was merely an inadvertent error. See Part I, supra.

The fragments of evidence that the majority does assemble do not support, much less compel, a finding of advertence or fraudulent intent.5 The mere inclusion of the term "audiovisual work" in the registration and original

_____

4. The majority's reference to Whimsicality, Inc. v. Rubie's Costume Co., 891 F.2d 452 (2d Cir. 1989) is inapposite. First, Whimsicality concerned a motion for summary judgement, not a motion to dismiss. A factual finding of fraudulent intent is simply inappropriate at the pleadings stage. Moreover, the judgment of the Whimsicality court was later vacated in light of an affidavit from the Copyright Office stating that it had not, in fact, been misled by Whimsicality's registration statement. See Whimsicality, Inc. v. Rubie's Costume Co., Inc., 836 F. Supp. 112 (E.D.N.Y. 1993). Indeed, the facts of the Whimsicality case should serve to caution this Court against making hasty findings of bad faith before the record below has been fully established.

5. The majority claims that it need not go so far as to find "fraud on the Copyright Office" in order to nullify Raquel's copyright. This is a distinction without a difference: the majority's findings of advertence and
materiality are, in substance, a finding of fraud. See Whimsicality, Inc. v.
Rubie's Costume Co., Inc., 836 F. Supp. 112, 118 (E.D.N.Y. 1993) ("two elements are required to find [copyright fraud]: an intent to mislead and

behavior which would be objectively likely to mislead").

24

complaint may simply indicate a confusion on the part of counsel arising from the fact that the song Raquel intended to copyright was fixed on the soundtrack of a videotape.6 Raquel's failure to amend the registration as to the nature of the work similarly evinces no fraudulent intent, but merely a reasonable reliance on the District Court's 1996 holding that it had already validly registered its copyright in the music and lyrics of the song. In any event, the majority's resolution of the factually ambiguous question of advertence against Raquel at the pleading stage violates the basic principle that, for purposes of a motion to dismiss, the complaint must be viewed in the light most favorable to the plaintiff, and all well-pleaded factual allegations taken as true. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

IV.

For these reasons, I would conclude that Raquel does have a registered copyright in the song "Pop Goes the Music" that entitles it to bring suit, and I respectfully dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

6. Raquel's copyright counsel Edward C. Terreri stated under oath that "I described the media on which Raquel performed the Song as `audiovisual' because that seemed logical and also that decision was concurred in by a specialist in the Copyright Office with whom I communicated." App. 187-88 (emphasis added).