**RAQUEL, a partnership, Plaintiff,**

v.

**EDUCATION MANAGEMENT CORP., Geffen Records, Inc., Nirvana, a partnership, Defendants.**

**EDUCATION MANAGEMENT CORP., Third–Party Plaintiff,**

v.

**ELIAS/SAVION ADVERTISING, INC., Third–Party Defendant.**

**GEFFEN RECORDS, INC., Nirvana, Third–Party Plaintiffs,**

v.

**ART INSTITUTES INTERNATIONAL, INC., Third–Party Defendant.**

**Civil A. No. 95–1620.**

United States District Court, W.D. Pennsylvania.

Nov. 25, 1996.

Bruce M. Campbell, James A. Lewis, Edward C. Terreri, Plowman, Spiegel & Lewis, Pittsburgh, PA, for Raquel.

Dennis St. John Mulvihill, Robb, Leonard & Mulvihill, Pittsburgh, PA, for Education Management Corp. and Art Institutes Intern., Inc.

Elizabeth L. Rabenold, Michael J. Kline, Thorp, Reed & Armstrong, Pittsburgh, PA, for Geffen Records, Inc. and Nirvana.

Thomas C. Wettach, Titus & McConomy, Pittsburgh, PA, Irvin S. Bails, Frank, Bails, Kirk, Murcko & Toal, Pittsburgh, PA, for Elias/Savion Advertising, Inc.

## MEMORANDUM ORDER

LEE, District Judge.

On October 10, 1996, this case was referred to United States Magistrate Judge Francis X. Caiazza for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)(1)(A) and (B), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

The magistrate judge's report and recommendation, filed on October 11, 1996, recommended that the Motion to Dismiss (document number twenty-eight) filed by the Third Party Defendant Elias/Savion Advertising, Inc. against the original Plaintiff Raquel be granted, without prejudice. The report also recommended that although the Defendants—Education Management Corporation, Geffen Records, Inc. and Nirvana, a partnership—did not move for the dismissal of the Plaintiff's claims against them, these claims should likewise be dismissed, without prejudice, because the Plaintiff's action filed against the remaining Defendants is not based upon diversity of citizenship and because there is no subject matter jurisdiction. The Report further recommended that the pendent state claims likewise should be dis-

missed without prejudice because the court no longer has supplemental jurisdiction of the breach of contract and conversion claims since there is no independent basis for federal jurisdiction of these pendent state claims. The parties were allowed ten (10) days from the date of service to file objections. Service was made on all parties and objections were filed by the Plaintiff Raquel and also by the third party Defendant Elias/Savion on October 28, 1996. After *de novo* review of the pleadings and documents in the case, together with the report and recommendation and objections thereto, the following order is entered:

AND NOW, this 25th day of November, 1996;

IT IS HEREBY ORDERED that the Motion to Dismiss (document number twenty-eight) filed by the Third Party Defendant Elias/Savion Advertising, Inc. against the original Plaintiff Raquel is granted, without prejudice.

IT IS FURTHER ORDERED that the action against Education Management Corporation, Geffen Records, Inc. and Nirvana, a partnership, is also dismissed, without prejudice.

IT IS FURTHER ORDERED that because the Third–Party Plaintiffs; viz., Geffen Record, Inc and Nirvana have been dismissed, there now is no basis for their action against the Third–Party Defendant, Art Institutes International, Inc. Accordingly, the action against Art Institutes International, Inc., is likewise dismissed, without prejudice.

Finally, Elias–Savion's Motion for Counsel Fees is denied.

The report and recommendation of Magistrate Judge Caiazza, Document No. 34, dated October 11, 1996, is adopted as the opinion of the court.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

CAIAZZA, United States Magistrate Judge.

### I.

### RECOMMENDATION

The Motion to Dismiss (document number twenty-eight) filed by the Third Party Defendant Elias/Savion Advertising, Inc. against the original Plaintiff Raquel should be granted, without prejudice. Although the Defendants—Education Management Corporation, Geffen Records, Inc. and Nirvana, a partnership—did not move for the dismissal of the Plaintiff's claims against them, these claims should likewise be dismissed, without prejudice, because the Plaintiff's action filed against the remaining Defendants is not based upon diversity of citizenship and because there is no subject matter jurisdiction. Also, the court no longer has supplemental jurisdiction of the breach of contract and conversion claims because there is no independent basis for federal jurisdiction of these pendent state claims. Accordingly, the pendent state claims should be dismissed, without prejudice.

### II.

### REPORT

*Procedural Background*

The Plaintiff, Raquel, a musical partnership, consisting of band members William Covert, Ronald Alan English, Lawrence Sean McDonald, Eric Gadrix and Kevin Lawrence McDonald, filed this action on October 11, 1995, for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* against the Defendants Education Management Corporation (EMC), Geffen Records, Inc. (Geffen) and Nirvana, a partnership. EMC filed a Third Party Complaint against Elias/Savion Advertising, Inc. (Elias/Savion) seeking indemnification and/or contribution regarding its potential liability to Raquel.

In its Complaint, Raquel alleges that subject matter jurisdiction exists with this court pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338 regarding its copyright infringement claim against EMC, Geffen and Nirvana. Relatedly, this action is premised upon an alleged infringement of a copyright based on an agreement entered into by Raquel, EMC and Elias/Savion, acting as the

agent of EMC. The underlying facts are these.

*Factual Background*

Phillip Elias (Elias), President of Elias/Savion, was contacted by Greg Temnick of EMC in August of 1990 to produce television commercials for EMC. The commercials were designed to focus on the music industry's educational programs offered by Art Institutes International, which is operated by EMC. One of the television commercials was entitled "Before the Crowd Roars." Elias commenced the project by directing the script preparation, which included a musical rock performance, and a search was conducted to hire musicians to perform in the commercials. The Plaintiff Raquel was the successful applicant.

Although Elias/Savion originally planned to use prerecorded music for the Commercial, Raquel submitted a demonstration tape of their own musical work entitled "Pop Goes the Music." EMC then agreed to use the Raquel song and, as a result Raquel, EMC and Elias/Savion executed a license agreement for the use of Raquel's musical work as well as their performance of "Pop Goes the Music" in the commercial. In its Complaint, Raquel generally alleges that the agreement provided for a three year license for the use of their original work "Pop Goes the Music" and "that the Defendant EMC continued to use the Subject Work in television advertising at various times after the end of the three year period without permission from the Plaintiff and thereby knowingly and willfully infringed upon the Plaintiff's copyright in the Subject Work." Compl. ¶ 27. The Plaintiff also claims that EMC, acting through Art Institutes International, entered into an agreement with the Defendants Geffen and Nirvana for a "video show which embodied and included the Subject Work." Compl. at ¶ 29. Also included in the Complaint are supplemental state claims based upon a breach of contract action and a conversion action.

Prior to commencing this action, Raquel's individual members registered a federal copyright which identified the title of the work as "Pop Goes the Music" and the nature of the work as being an "Audiovisual Work." In that portion of the application document entitled "Nature of Authorship" each author described the work as "All music & lyrics & arrangements."

Now before the court for resolution is a Motion of Third Party Defendant Elias/Savion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).

*Motion to Dismiss, Subject Matter Jurisdiction; Rule 12(b)(1) Standard*

A Motion to Dismiss filed pursuant to the provisions of Federal Rule of Civil Procedure 12(b)(1) typically raises the question of the federal court's subject matter jurisdiction. The burden of proof regarding a 12(b)(1) motion rests with the party asserting jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942). Fundamentally, the moving party questions the authority of the court to hear the case. Relative to the federal question issue, a case arises under federal law only if it is federal law that creates the cause of action. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); however, jurisdiction may arise under federal law "where the vindication of a right under state law necessarily turns on some construction of federal law." *Id.* at 9, 103 S.Ct. at 2846. Next, in diversity cases, the plaintiff must demonstrate complete diversity of citizenship. *City of Indianapolis v. Chase National Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941). Also, a court should not permit an amendment of the pleadings if subject matter jurisdiction cannot be truthfully averred in the complaint. *Harrison v. Local 54, AFSCME*, 518 F.2d 1276 (3d Cir.1975).

*Position of Elias/Savion*

Elias/Savion claims that the Plaintiff Raquel admitted in its Complaint that the videotaped footage embodying Raquel's performance of the Song (Pop Goes the Music) was produced by Elias/Savion for use in both the separate full length video of the band's performance of the song (the Video) and the commercial entitled "Before the Crowd Roars" (the Commercial). *See* Br. in Supp. of Mot. to Dismiss at 5 (hereafter Def.'s Br.).

Elias/Savion also refers the court to the Agreement appended to the Plaintiff's Complaint which states that " *'Elias/Savion will have sole right of creative decisions in regard to the final editing of all video mixes* resulting from the shoot.' " *See* Def.'s Br. at 5 (quoting Raquel Compl., Ex. 2 at Article Six) (emphasis in original).

Next, Elias/Savion claims that Elias is the true author of the audiovisual work which serves as the basis of Raquel's action. In that regard, Elias/Savion argues that Elias was "responsible for making *all* the editing decisions necessary to create the works in their *finished copyrightable forms*"; that prior to engaging the services of Raquel, Elias "created a script and a frame-by-frame shoot sequence of how the Commercial would be videotaped"; that "Elias personally directed the filming of the raw music video footage of Raquel's performance of the Song"; that "[t]his *same* footage, as scripted and directed by Mr. Elias, was used in both the finished video and the finished commercial"; and that "Mr. Elias personally made all the creative decisions in combining the re-mixed sound recordings with the raw music video footage to create both the finished Video and the finished Commercial." *See* Def.'s Br. at 5, 6. (emphases in original).

Also, Elias/Savion claims that there was never any assignment of its copyrightable rights to either the Video or the Commercial to Raquel and that, as a consequence, "Raquel has never owned a valid federal copyright in the work upon which the claims of infringement in this action have been brought." *See* Def.'s Br. at 6, 7. Finally, Elias/Savion states that "by virtue of the unambiguous provisions of Articles Three and Six of the Agreement provided in Exhibit 2 to Raquel's complaint, both Raquel and their counsel had *complete knowledge,* at the time the federal copyright registration attached as Exhibit 4 to the Complaint was *filed,* that neither Raquel nor any of its members held any ownership interest in the 'audiovisual work' that is the subject of this action." *See* Def.'s Br. at 7. (emphasis in original).

Finally in its motion, Elias/Savion argues that: (1) this court lacks subject matter jurisdiction over this action since suit was instituted without a validly registered federal copyright; (2) none of the registrants for copyright in the audiovisual work upon which this suit was brought ever held an ownership right in that work; and (3) an award of attorney's fees is appropriate under these facts since the Plaintiff and its counsel had full knowledge of the falsity of the statements made to the copyright office at the time the copyright registration was filed.

*Position of Raquel*

Raquel agrees that it never claimed an ownership interest in the Commercial, either in its copyright application or in its Complaint. It further states that Elias/Savion, acting as EMC's agent, bargained with Raquel for the use of the Plaintiff's song, Pop Goes the Music, and Raquel's performance of the song in the Commercial. *See* Pl.'s Br. in Opp'n to Dismiss Pl.'s Compl. at 3, 4 (hereafter Pl.'s Br.). Also, the Plaintiff states that "[a]s payment for use of the Song and for RAQUEL'S performance of the Song, Raquel was given a separate, full length Video of RAQUEL'S performance of the Song" and that "RAQUEL properly claimed a proprietary interest in both the Song and its performance of the Song, and in conjunction with its copyright registration, provided the Copyright Office with an audio-visual work which portrayed Raquel performing its original Song." Pl.'s Br. at 4.

Next, Raquel claims that "[a] careful reading of the Plaintiff's Copyright registration shows that Plaintiff only claimed authorship of the Song 'Pop Goes the Music' and more specifically, 'All music & lyrics & arrangements.' " The Plaintiff also states that "[T]he performance of this song ... was in audiovisual form." Pl.'s Br. at 7. Relatedly, and in further support of its position, Raquel argues that "Elias/Savion well knows that the bargained-for performance and presentation of the Song 'Pop Goes the Music' by Raquel was recorded in audiovisual form" and that "[t]he parties did not bargain for a sound recording by Raquel." Pl.'s Br. at 9. Raquel proceeds by arguing that "[i]n Article One of the License Agreement drafted by and controlled by Phillip Elias, RAQUEL granted full usage rights of the recording, music and lyrics, including lyric reprint rights, of

(their original work) 'Pop Goes the Music'....'" Pl.'s Br. at 9. Continuing with its statement of position, the Plaintiff states that:

> The Agreement drafted by, and controlled by Phillip Elias ... provides in Article Three, that 'RAQUEL reserves the right to use the song/video for the purpose of self-promotion'; in Article Five, 'Elias/Savion Advertising, for EMC, further agrees that it will provide one copy of a full-length video of the band's performance of the song as it will be recorded during the course of a television commercial shoot for EMC's Music and Video program'; in Article Seven, 'Elias/Savion Advertising agrees to deliver the edited video performance to RAQUEL in a timely manner....'...."

Pl.'s Br. at 10. Because of the specific terms of the agreement, RAQUEL then argues that it "has a right to register a copyright" of the song "Pop Goes the Music" and its performance of the work because Elias/Savion, acting as EMC's agent, bargained for a license to use the song and offered to the Plaintiff a fully edited videotape of Raquel's performance of the song "Pop Goes the Music."

*Discussion*

To satisfy the requirements of federal subject matter jurisdiction in this case, the Plaintiff's cause of action must necessarily arise under the Copyright Act. *American Well Works Co. v. Layne and Bowler Co.*, 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916). *See also* 17 U.S.C. §§ 101 *et seq.* In that regard, "an action arises under the federal copyright laws if and only if the complaint is for a remedy expressly granted by the Act, ... or asserts a claim requiring construction of the Act.... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." *Effects Assocs., Inc. v. Cohen*, 817 F.2d 72, 73 (9th Cir.1987) (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir.1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965)). Also, absent an infringement claim, federal courts decline jurisdiction. *Topolos v. Caldewey*, 698 F.2d 991 (9th Cir.1983). Related-ly, "[w]here there is a fatal flaw on the face of a complaint that purports to assert an infringement action, the suit should be dismissed for lack of subject matter jurisdiction. If no such flaw appears, the federal courts have jurisdiction." *Vestron, Inc. v. Home Box Office, Inc.*, 839 F.2d 1380, 1382 (9th Cir.1988) (citing *Bell v. Hood*, 327 U.S. 678, 681, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). Finally, " '[t]he elements of a copyright infringement action are (1) ownership of a valid copyright and (2) copying by the alleged infringer.' " *Masquerade Novelty v. Unique Industries*, 912 F.2d 663, 667 (3d Cir.1990) (quoting *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir.1989)). The issue now before the court for resolution is whether Raquel had a sufficient copyrightable interest in the subject matter of the work as described in the copyright application and, if so, whether it was properly alleged in the Plaintiff's Complaint.

As a general statement, " '[w]hether a case is one arising under ... a law ... of the United States ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the [complaint], unaided by anything alleged in anticipation of defenses....' " *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914)). As a matter of general principle, if Raquel's Complaint alleges a bona fide infringement claim, then this court has subject matter jurisdiction.

In its argument Elias/Savion states that the undisputed facts "clearly show that Mr. Elias was *solely* responsible for the *entire creative input* necessary to produce both the [full length] Video and the Commercial *in their finished copyrightable form*, and is thus the actual author of the "audiovisual work" that is the subject of this action." Def.'s Br. at 13. It is without dispute that audiovisual works are a proper subject of copyright protection:

> "Audiovisual Works" are works that consist of a series of related images which are intrinsically intended to be shown by the

use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied.

17 U.S.C. § 101. Considering the description immediately *supra*, it is clear that Raquel does not have a copyrightable interest in the Commercial. Conversely, the "Audiovisual Works" created by Elias/Savion represents a property right which fully satisfies the definitions of an audiovisual work. However, because musical works, including any accompanying words, can be the subject of a copyright the Plaintiff has a copyright interest in the song "Pop goes the Music." 17 U.S.C. § 102. The next sequential issue is whether Raquel obtained a copyright in its original song "Pop Goes the Music."

■■■ Relative to the substance of the Plaintiff's copyright claim, in its application Raquel identified the title of the work as "Pop Goes the Music" and it identified the nature of the authorship as "All music & lyrics & arrangements." In that regard, it is sufficiently clear that Raquel intended to obtain a copyright in its song, "Pop Goes the Music." Unfortunately, it described the nature of the work as being an "Audiovisual Work." However, an innocent omission or inclusion in a registration will not invalidate the copyright or render it incapable of supporting an infringement action. *Eckes v. Card Prices Update*, 736 F.2d 859 (2d Cir. 1984). *See also* M. Nimmer & D. Nimmer, Nimmer on Copyright, § 7.20, at 7–197 & 198 (1990) ("[A] misstatement or clerical error in the registration application if unaccompanied by fraud will not invalidate the copyright nor render the registration incapable of supporting an infringement action. This assumes, of course, that the work would have been eligible for a copyright registration had a correct statement of facts been contained in the registration application.")[1] Here, the court finds that the inclusion of the term "Audiovisual Work" was inadvertently included in the copyright application and, as a consequence, it did not invalidate the copyright of the music and lyrics to the song "Pop

Goes the Music." However, the discussion does not end here.

■■■ As this court has already stated, "[w]here there is a fatal flaw on the face of a complaint that purports to assert an infringement action the suit should be dismissed for lack of subject matter jurisdiction." *Vestron, Inc. v. Home Box Office, Inc.*, 839 F.2d 1380, 1382 (9th Cir.1988) (citing *Bell v. Hood*, 327 U.S. 678, 681–82, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946)). Also, in order to bring an action in federal court, the plaintiff must have first filed a valid federal copyright registration in the work upon which he or she has based the infringement claim. 17 U.S.C. § 409. The failure to satisfy this jurisdictional prerequisite deprives a federal court of subject matter jurisdiction. *Masquerade Novelty v. Unique Industries*, 912 F.2d 663, 667 (3d Cir.1990); *see also Cameron v. Graphic Management Associates, Inc.*, 817 F.Supp. 19, 22 (E.D.Pa.1992).

In its Complaint the Plaintiff has alleged the following:

19. Said musical video and TV commercial (hereinafter referred to as the "Subject Work"), upon being fixed in the tangible medium of a videotape, was published by Plaintiff with a notice of copyright on February 20, 1991.

20. The Subject Work contains material wholly original in the Plaintiff that is copyrightable subject matter under the laws of the United States.

21. On or about July 18, 1995, Plaintiff applied to the Register of Copyrights for a Certificate of Registration in the Subject Work. The Certificate was issued by the Register of Copyrights on July 16, 1995, and bears registration number PA 675837. A true and correct copy of the certificate is attached as Exhibit 4.

22. Plaintiff is currently, and at all relevant times has been the sole proprietor of all right, title and interest in and to the Copyright in the Subject Work. Plaintiff has produced the Subject Work in strict conformity with the provisions of the Copyright Act of 1976 and all other laws governing copyright.

---

1. *See* the Declaration of Edward C. Terreri, appended to Pl.'s Br. as Ex. B, in which he states that the copyright application was filed in good

faith "with no intent to seek any greater rights for RAQUEL than those to which RAQUEL is entitled."

*See* Compl. ¶¶ 19, 20, 21, and 22.[2] A reading of the relevant allegations in the Complaint reveals that the subject matter of the cause of action as pled by Raquel is the full length musical video and the Commercial. However, as the court has stated *supra*, the Plaintiff has no copyrightable interest in the Commercial nor has the Plaintiff applied for and received a copyright of its performance of the song "Pop Goes the Music" as it appears in the full length video. Because the infringement claim as alleged in the Complaint is based upon the Commercial and not upon the musical work "Pop Goes the Music" Elias/Savion's Motion to Dismiss should be granted, without prejudice.

Parenthetically, the court will make no determination regarding the right of Raquel to copyright its performance of the song "Pop Goes the Music" as it appears in the full length video. In that regard, in its registration application Raquel did not apply for a copyright regarding its performance of the song and a determination of the Plaintiff's intellectual property right in the video would be advisory at this juncture.

■ Finally, because Raquel had a copyrightable interest in the song "Pop Goes the Music" it did not knowingly fail to advise the copyright office of facts which might have led to the rejection of its registration application. *See Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 456–57 (2d Cir.1989). Relatedly, although the Plaintiff has no interest in the Commercial, Raquel nevertheless has an ownership interest in both the music and the lyrics of the song "Pop Goes the Music." Accordingly, Elias/Savion's motion requesting attorney fees should be denied. Because Elias/Savion has prevailed in its Motion to Dismiss, the Plaintiff's Motion requesting attorney fees should also be denied.

### Sua Sponte Dismissal of Remaining Defendants

The Motion to Dismiss filed by the Third Party Defendant Elias/Savion against the original Plaintiff Raquel should be granted, without prejudice. Also, although EMC, Geffen and Nirvana did not move for the dismissal of the Plaintiff's claims against them, these claims should likewise be dismissed because this action is not based upon diversity of citizenship and because there is no federal question jurisdiction. *Berks Products Corp. v. Landreau,* 523 F.Supp. 304, 313 (E.D.Pa.1981).

Parenthetically, the court recognizes that Geffen is a California corporation; however, the Raquel action against Geffen is based upon an alleged copyright infringement and is not premised upon diverse citizenship. Also, Raquel's claim against Nirvana is likewise based upon an infringement of the "Plaintiff's copyright in and to the Subject Work...." *See* Compl. ¶ 49.

### Pendent State Actions

Finally, the court does not have supplemental jurisdiction of the breach of contract and conversion claims because there is no longer an independent basis for federal jurisdiction. *See* 28 U.S.C. 1367(c)(3).

In accordance with the magistrates act, 28 U.S.C. § 636(b)(1)(B) and (C), and rule 72.1.4(B) of the local rules for magistrates, objections to this report and recommendation are due by October 28, 1996. Responses to objections are due by November 7, 1996.

2. The most direct reference to the original work "Pop Goes the Music" is found in paragraphs thirteen and twenty of the Complaint. Those paragraphs state that:

> As a result of said proposal and said negotiations, Plaintiff agreed to perform for the production of a music video and a TV commercial and Plaintiff agreed that Plaintiff's original song "Pop Goes The Music" would be used in the music video and TV commercial, as more fully described in a press release from Elias/Savion, dated December 14, 1990, a true

and correct copy of which is attached hereto and marked as "Exhibit 1".
Compl. ¶ 13.
"The Subject Work contains material wholly original with Plaintiff that is copyrightable subject matter under the laws of the United States."
Compl. ¶ 20.
However, an overall reading of the complaint clearly reveals that the Complaint alleges an infringement in the "Subject Work," which the Plaintiff identifies as the musical video and television commercial. *See* Compl. ¶ 19.