OPINION OF THE COURT
SLOVITER, Circuit Judge.
Before us is an appeal from the order of the District Court dismissing for lack of subject matter' jurisdiction this copyright infringement action filed by appellant Raquel. The court based its decision on Raquel’s failure to show registration of its copyright claim. in accordance with the Copyright Act, which is a prerequisite for the filing of an action for infringement. 17 U.S.C. § 411(a).
I.
Raquel is a partnership comprising musicians and songwriters who authored the music, lyrics, and arrangement for an original song entitled “Pop Goes the Music” (“the Song”). Raquel granted defendants Elias/Savion Advertising Agency, Inc. (“Elias/Savion”) and' Education Management Corporation (“EMC”), a license to use the Song and Raquel’s performance for three years in a televisipn commercial produced by Elias/Savion that advertised the educational programs offered by Art Institutes International (an entity operated by EMC). As compensation for its license of the Song and its performance, Raquel received a separate, full-length music video of some four minutes’ duration. Like the commercial, the video was produced by Elias/Savion.
In July 1995, Raquel, through counsel, filed a federal copyright registration form with the Register of Copyrights. It identified the nature of the work for which copyright registration was sought as an “Audiovisual Work,” the title of the work as “Pop Goes the Music,” and the nature of authorship as “All music and lyrics and *174 arrangement.” App. at 48. Raquel deposited with the application a videotape apparently containing both the commercial and the full-length music video.
In October 1995, Raquel filed a copyright infringement action under the Copyright Act, 17 U.S.C. § 101, in the United States District Court for the Western District of Pennsylvania against EMC, Geffen Records, and the music group Nirvana. Raquel alleged in its complaint that EMC violated the licensing agreement by continuing to run the commercial beyond the three-year period provided for in the agreement and that EMC, acting through Art Institutes International, infringed its copyright by entering into an agreement with defendants Geffen and Nirvana for the use of a portion of the commercial containing the Song “Pop Goes the Music” in a music video for Nirvana. EMC then filed a third-party complaint against Elias/Savion seeking indemnification and/or contribution for any liability it may have had toward Raquel.
On motion of Elias/Savion, the District Court dismissed the complaint against all defendants for lack of subject matter jurisdiction. Raquel v. Education Mgmt. Corp., 955 F.Supp. 433 (W.D.Pa.1996).[1] The court noted that in the complaint Raquel alleged that the “musical video and TV commercial (hereinafter referred to as the ‘Subject Work’), upon being fixed in the tangible medium of a videotape, was published by [Raquel] with a notice of copyright on February 20, 1991” and that the work “contains material wholly original in [Raquel] that is copyrightable subject matter.” Id. at 439. The court then noted that Raquel had registered the copyright as an “audiovisual work” entitled “Pop Goes the Music,” whereas Mr. Elias of Elias/Savion, not Raquel, was the acknowledged author of the commercial and music video. Id. at 438. Raquel therefore did not have a copyrightable interest in the work that formed the basis of its lawsuit because it was undisputed that Elias/Sa-vion was the sole author of the audiovisual. Id. at 439. The court concluded that because the complaint based the infringement claim upon the commercial (in which Raquel had no interest) and not upon the musical work, it had no subject matter jurisdiction and would grant the motion to dismiss. Id. at 440.
The District Court nonetheless denied attorneys fees to Elias/Savion. The court, which had previously stated that “the term ‘Audiovisual Work’ was inadvertently included,” id. at 439, stated that Raquel has a “copyrightable interest” in the Song, and “did not knowingly fail to advise the copyright office of facts which might have led to the rejection of its registration application.” Id. at 440.
On December 2, 1996, after the dismissal of its first complaint, Raquel’s counsel filed a supplemental registration form with the Copyright Office. This document added “performance of song Pop Goes the Music” to the description of the nature of the authorship in the earlier registration, but made no other changes. App. at 67. On December 20, 1996, Raquel, again through counsel, filed yet another supplemental registration form. In this form, Raquel sought to “amplify” line one of the registration form, that describing the “nature of the work,” by fihng two copies of the video of Raquel performing the Song. By way of explanation, Raquel stated on the form: “Original fifing was made with videocassette which contained ‘Video’ of RAQUEL performing song, ‘Pop Goes the Music’, and also contained other items as to which claimant does not assert copyright.” App. at 55.
The following week, Raquel filed a second copyright infringement action against the same defendants who were named in the first complaint. The second complaint *175 made essentially the same factual allegations, but asserted that the copyright that was the subject of the infringement was Raquel’s copyright in the Song. The defendants moved to dismiss for lack of subject matter jurisdiction, asserting, inter alia, that Raquel’s copyright registration was insufficient to support jurisdiction for an action alleging infringement of its copyright in the Song.
The District Court initially denied the defendants’ motion. On the defendants’ motion for reconsideration, the court, approving and adopting a report and recommendation from the Magistrate Judge, granted the motion and dismissed the case. The District Court’s dismissal was based on its conclusion that neither Raquel’s copyright registration nor its supplemental registration was sufficient to confer jurisdiction in an action for infringement of the Song. Raquel timely appealed.
II.
The Copyright Act provides: “[N]o action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title.” 17 U.S.C. § 411(a). Thus, the issue is whether Raquel has met the jurisdictional prerequisite for maintaining a copyright infringement action, namely a valid registration in the work that has allegedly been subject to an infringing use. . Our review of the District Court’s dismissal for lack of subject matter jurisdiction is plenary. See Singh v. Daimler-Benz AG, 9 F.3d 303, 305 (3d Cir.1993).
A.
We first confront Raquel’s argument that the District Court erred in failing to adhere to its determination in the first lawsuit “that the 1995 Registration was a valid registration of the Song.” Appellant’s Br. at 25. There is language in the District Court’s 1996 opinion which, standing alone, might lead one to conclude that the District Court opined that Raquel did have a registered copyright in its Song despite its description of the work as an “Audiovisual work.” At one point in its opinion, the court stated that the inclusion of the term “Audiovisual Work” in the application “did not invalidate the copyright of the music and lyrics to the song ‘Pop Goes the Music’;” id. at 439, and at another point stated that Raquel “had a copyrightable interest in the [Song];” id. at 440 (emphasis added). The District Court stated that the characterization as an audiovisual work was inadvertent, and then stated, “[A]n innocent omission or inclusion in a registration will not invalidate the copyright- or render it incapable of supporting an infringement action.” Id. at 439. However, because the District Court dismissed the case for want of jurisdiction on the ground that Raquel had only pleaded a copyright interest in the commercial and the video, in which Raquel had no copyrightable interest, and the case before it raised the issue of the validity of the registration of the audiovisual work, its statement suggesting that the registration was valid vis-a-vis the Song was not necessary to the decision and is at most dictum. It did hot, therefore, bind the District Court in this case, which is a new lawsuit with a separate civil action number. Of course, as the first dismissal was never appealed to this court, any statement or inference raised by the District Court could not bind us.
We note parenthetically that both the magistrate judge and the district court judge in this case are, respectively, the judges who recommended dismissal and who dismissed the first complaint. Consequently, although we appreciate why Raquel might have drawn the opposite conclusion, we conclude that the issue whether Raquel had a registered copyright in the Song was not decided. We turn then to that question, which is central to the District Court’s subject matter jurisdiction in this case.
*176 B.
Although a failure properly to register a work does not invalidate the copyright itself, it does preclude the maintenance of an infringement action until such time as the purported copyright holder obtains a valid registration. See Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc., 29 F.3d 1529, 1531-32 (11th Cir.1994); 17 U.S.C. § 411(a); Melville B. Nimmer & David Nimmer, 2 Nimmer on Copyright §§ 7.16[A][1], 7.16[B] (1997) [hereinafter Nimmer & Nimmer],
Raquel contends that its initial registration — in which it characterized the nature of the copyrighted work as an “Audiovisual Work” — and its supplemental registration — in which it added description of the nature of the authorship — are sufficient to invoke the subject matter jurisdiction of the federal courts. Raquel presses this contention on two fronts. First, it urges that its 1995 registration is sufficient, despite its imprecision, to support an infringement action based upon its Song. Second, Raquel argues that its performance of the Song is itself a copyrightable interest, and that its initial and supplemental registration forms together constitute a valid registration that would support a lawsuit charging infringement of Raquel’s copyright in the performance of the Song. We address these arguments in turn.
C.
Raquel contends that its designation of the nature of its work as an “Audiovisual Work” in its copyright registration should not bar it from bringing this infringement action for infringement of the Song because the designation was merely an inadvertent and immaterial error. In pressing this argument, Raquel places considerable reliance on our decision in Masquerade Novelty, Inc. v. Unique Industries, Inc., 912 F.2d 663 (3d Cir.1990). In that case, the plaintiff Masquerade, a manufacturer of novelty masks, claimed infringement of its copyright in its nose masks (specifically, pig, elephant and parrot nose masks). The district court granted summary judgment to the defendant, ruling, inter alia, that Masquerade had omitted material facts from its copyright registration. On appeal, the defendant, a competing seller of nose masks, urged that Masquerade did not hold valid copyrights because it failed to specify that the masks were to be worn by humans. It contended that the omitted information would have led the Copyright Office to have declined to issue the registrations (apparently on the assumption that the Register of Copyrights would have found the masks to be costumes, which are not copyrightable).
On appeal, we determined that the supposed omission was immaterial because the applications identified the articles as “nose masks.” In doing so, we acknowledged that “[fit has been consistently held that a plaintiffs knowing failure to advise the Copyright Office of [material] facts ... constitutes grounds for holding the registration invalid and incapable of supporting an infringement action.” Id. at 667. However, because we concluded that the omission was not a material one, we held it unnecessary to decide “whether an inadvertent omission of material information from a submission to the Copyright Office renders the copyright unenforceable, deprives the copyright owner of its § 410(c) presumption [of validity], or has no legal effect.” Id. at 668. We nonetheless observed in a footnote that the “view that an inadvertent omission from a registration application will render a plaintiffs copyright incapable of supporting an infringement action has not gained acceptance with the courts,” and also stated that “[i]t may be that the correct approach in situations where there has been a material, but inadvertent omission, is to deprive the plaintiff of the benefits of § 410(c) [incontestability after five years] and to require him to establish the copyrightability of the articles he claims are being infringed.” Id. at 668 n. 5.
*177 Hence, our opinion in Masquerade supports the general proposition that an inadvertent and immaterial misstatement will not invalidate a copyright registration, a proposition on which there is broad consensus in the federal courts. See, e.g., Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1161 (1st Cir.1994); Eckes v. Card Pnces Update, 736 F.2d 859, 861-62 (2d Cir.1984). Less clear, however, is the effect of a misstatement that is material but inadvertent. See Data General, 36 F.3d at 1163 (“No court has suggested that a registration premised in part on an unintentional material error would fail to satisfy the jurisdictional requirement of Section 411(a).”); Masquerade, 912 F.2d at 668 & n. 5. As our discussion below will demonstrate, however, we need not decide that question for the purposes of this appeal because, on the undisputed record before the court, we cannot conclude that the misstatement was immaterial and unknowingly made.
Raquel readily concedes that the designation of the nature of its work on its 1995 copyright registration form was inaccurate. It urges, however, that the designation of the nature of the work as an “Audiovisual Work” was immaterial and that in any event it was inadvertent and therefore should not bar jurisdiction over this lawsuit.
In determining the materiality of a misstatement in a copyright registration, we examine whether the inaccuracy might have influenced the Copyright Office’s decision to issue the registration. See Data General, 36 F.3d at 1161 (“In general, an error is immaterial if its discovery is not likely to have led the Copyright Office to refuse the application”); Eckes, 736 F.2d at 861-62 (“ ‘[KJnowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action’ ” (quoting Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc., 482 F.Supp. 980, 988 (S.D.N.Y.1980))).
In this case, the registration identifies the work as an audiovisual work entitled “Pop Goes the Music,” rather than the kind of work on which the complaint is based — a song entitled “Pop Goes the Music.” The Copyright Act defines “Audiovisual works” as “works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds.” 17 U.S.C. § 101. One need have no special expertise in intellectual property law to apprehend that an audiovisual work is facially very different from a song, which would fall under the rubric of “musical works, including any accompanying words,” 17 U.S.C. § 102(a)(2).
We conclude that this mischaracterization is material. Had the Register of Copyrights known that Raquel did not author the audiovisual work identified in its registration, it is likely that this rather fundamental misstatement would have occasioned the rejection of Raquel’s application.[2]
*178 To be sure, there are numerous cases suggesting that many kinds of inadvertent and immaterial errors in copyright registration forms will be excused. Courts have forgiven plaintiffs for having misiden-tifíed the author of a work, see, e.g., Thomas Wilson & Co. v. Irving J. Dorfman Co., 433 F.2d 409 (2d Cir.1970) (listed president of corporation instead of corporation); Testa v. Janssen, 492 F.Supp. 198 (W.D.Pa.1980) (listed author’s assignee), or misidentified the owner of the copyright, see Wales Indus. v. Hasbro Bradley, Inc., 612 F.Supp. 510 (S.D.N.Y.1985) (listing as copyright claimant the exclusive licensee). The leading treatises support this view as well. See, e.g., Nimmer & Nimmer § 720[B] at 7-208 (“The courts generally have been most lenient ... with respect to any innocent error contained in an application for a registration certificate.”); 1 Paul Goldstein, Copyright § 3.12.3, at 345 (1989) (“Courts have excused innocent errors or omissions affecting virtually every material aspect of a copyright registration application.”).
However, Raquel has not cited, nor have we found, a case in which the misstatement to be excused is as fundamental as the one in this case. Here, Raquel misidentified the nature of the work in such a way as to suggest an attempted registration in a work not authored by the registrant, namely, the commercial advertisements authored, as the parties agree, by Elias/Savion.[3] In all of the cases excusing immaterial errors the registrant had the right to the work described in the registration form. Raquel, however, does not have the right to the audiovisual work described in the registration form.
Raquel points to Urantia Foundation v. Maaherra, 114 F.3d 955 (9th Cir.1997), and Harris v. Emus Records Corp., 734 F.2d 1329 (9th Cir.1984), as instances where courts have forgiven registrants for misidentifying a work. We find both inapposite. Neither involves misidentification of a type or degree that is equivalent to that presented in the case at bar. In Urantia, the court considered the validity of a copyright renewal form in which the applicant referred to itself as “the proprietor of a work made for hire” rather than, more accurately, “the proprietor of a composite work.” 114 F.3d at 962. The court concluded that the misidentification of “a particular type of proprietorship” did not affect the validity of the copyright renewal. Id. at 962. There was no question as to the fundamental nature of the work itself, which was in that case a book believed to have been “authored by celestial beings and transcribed, complied and collected by mere mortals.” Id. at 956. Hence, the imprecision excused by the court in Urantia was not, as in the present case, one that presented any likelihood of confusion as to the work for which copyright protection was sought.
Nor does the Ninth Circuit’s decision in Harris offer support for Raquel. In Harris, the court determined, as a “subsidiary issue[ ],” that a registration form incorrectly identifying singer Emmylou Harris as the author of a work did not bar Harris’s infringement suit where subsequent transfers resulted in Harris’s ownership of *179 the copyright before suit was instituted and the defendant showed no prejudice from the misidentification of the author. 734 F.2d at 1335. Thus, Harris, like Urantia, did not involve a registration form that purported to register a copyright in a work other than the one on which the infringement suit was based.
Consequently, despite the generally accommodating stance taken where the misstatement in the registration form does not go to the nature of the work for which protection is sought, we find in this case a serious imprecision in identifying the work itself. A copyright registration that misidentifies the nature of a copyrighted work fails to give proper notice to the Register of Copyrights regarding the nature of the intellectual property for which protection is sought. As a result, it is not unreasonable to demand some accuracy on this matter.
D.
We also cannot find on this record that the misstatement in the registration form was an innocent error. Defendants argue, and we agree, that there is no record evidence that the misstatement was inadvertent. It would be difficult to draw the inference of inadvertence from this record. Counsel for Raquel (who is not counsel in this appeal) executed the registration form on Raquel’s behalf on July 18, 1995, denoting the nature of the work as an “Audiovisual Work.” The same attorney then filed the first infringement action on October 11, 1995, identifying the work forming the basis of Raquel’s infringement claim as the commercial and the video, both clearly audiovisual works. See Raquel, 955 F.Supp. at 440. It is difficult to conclude that an attorney who executed a registration form for an “Audiovisual Work” and then proceeded to file a complaint alleging that the defendants infringed Raquel’s copyright in audiovisual works intended the copyright to cover the Song.
Furthermore, as the complaint alleges, the Song was authored in 1990, although the video and commercials were created in 1991. The registration form identifies the year in which creation of the work was completed as 1991, the year in which the video and commercials were produced, which further suggests that the work for which registration was sought in 1995 was the video and commercials, as the registration form itself indicated, rather than the Song itself. Nor did Raquel, after the dismissal of its first suit, file a new copyright registration form that correctly identified the nature of the work for which it sought copyright as a musical work or song before instituting an infringement action based upon the Song.
Based on the information on record, we cannot conclude that the inaccuracy in Raquel’s 1995 registration was either immaterial or inadvertent. Raquel filed a registration form suggesting authorship of an audiovisual work in which it had no copyrightable interest. Although we need not go as far as did the court in Whimsicality, Inc. v. Rubie’s Costume Co., 891 F.2d 452 (2d Cir.1989), which labeled as “fraud on the Copyright Office” a registration for what proved to be plaintiffs Halloween costumes (which are not entitled to copyright protection) which plaintiff had described on its application as “soft sculptures” (which are entitled to copyright protection),[4] the fact remains that Raquel filed a registration form suggesting au *180 thorship of an audiovisual work in which it had no copyrightable interest. There is a fundamental difference between an audiovisual work and a song. We conclude therefore that the 1995 copyright registration could not serve as the jurisdictional basis for this suit notwithstanding that this complaint, unlike the first, sues for infringement of the Song.
E.
Raquel’s second argument is that it has, by means of its supplemental registration, a registered copyright in Raquel’s performance sufficient to invoke the court’s subject matter jurisdiction on a claim that the defendants infringed its copyright in that performance.
There is no doubt that one can have a copyrightable interest in a particular performance of a song. See, e.g., Woods v. Bourne Co., 60 F.3d 978, 983 (2d Cir.1995) (“[Pjerformances include television broadcasts of the Song as captured in movies and television programs and radio broadcasts of the Song as captured in sound recordings.”); Daboub v. Gibbons, 42 F.3d 285, 288 (5th Cir.1995) (“The distinction may be summed up as the difference between a copyright in a Cole Porter song and a copyright in Frank Sinatra’s performance of that song. The former would be a musical work copyright and the latter would be a sound recording copyright, although both may be embodied in the same phonorecord.” (quoting 1 M. Nimmer, Copyright § 4.06, p. 4-34 n. 1)). However, once again Raquel founders because it has not demonstrated that it has registered a copyright in its performance so as to satisfy the jurisdictional requirement of 17 U.S.C. § 411(a).
Raquel’s interest in its performance was not decided in the first action. The court did note that Raquel had not applied for nor received a copyright of its performance of the Song and stated that it would make no determination regarding Raquel’s right to copyright its performance. Raquel, 955 F.Supp. at 440. Assuming that Raquel has a copyrightable interest in the performance of the Song as captured on the video, we must decide whether Raquel’s supplemental registration is sufficient to register a copyright in the performance, when the initial registration was for an “Audiovisual Work,” and, if so, whether Raquel’s complaint has alleged an infringement of its performance of its Song.
Raquel’s attempt to use its supplemental registration as a basis for asserting a claim that the defendants infringed its copyright in its performance rests on an erroneous understanding of the function of supplemental registration. The applicable regulation governing supplementary registration states:
(2) Supplementary registration may be made either to correct or to amplify the information in a basic registration. For the purposes of this section:
(i) A “correction” is appropriate if information in the basic registration was incorrect at the time that basic registration was made, and the error is not one that the Copyright Office itself should have recognized;
(ii) An amplification is appropriate:
(A) To supplement or clarify the information that was required by the application for the basic registration and should have been provided, such as the identity of a coauthor or co-claimant, but was omitted at the time the basic registration was made, or
(B) To reflect changes in facts, other than those relating to transfer, license, or ownership of rights in the work, that have occurred since the basic registration was made.
(iii) Supplementary registration is not appropriate:
(A) As an amplification, to reflect a change in ownership that occurred on or after the effective date of the basic registration or to reflect the *181 division, allocation, licensing or transfer of rights in a work; or (B) To correct errors in statements or notices on the copies of phono-records of a work, or to reflect changes in the content of a work[,]
37 C.F.R. § 201.5(b).
Raquel’s effort to use its supplementary registration to change the nature of the work as set forth in its original registration does not neatly fit into the concepts of “correction” or “amplification” as used in the regulation. By filing the supplemental registration, Raquel did not seek to cure “incorrect information” in the initial registration, “supplement or clarify” omitted information, or “reflect changes in facts.” Rather, by means of the supplemental registration, Raquel sought to change the nature of the work for which a copyright is claimed. This attempt is more akin to the prohibited use of supplemental registration set forth in § 201.5(b)(2)(iii)(B), viz., “to reflect changes in the content of a work.”
What Raquel urges is essentially that the supplemental registration should supersede the original registration. That is, rather than the “audiovisual work” for which it had registered a copyright, Raquel sought to copyright a “performance” through its supplemental registration. That such a use of the supplemental registration process is at odds with the intent of the regulation is underscored by the statutory provision enabling the regulation, 17 U.S.C. § 408(d). That section permits the promulgation of regulations allowing authors to use supplemental registration “to correct an error in a copyright registration or to amplify the information given in a registration” but clearly states: “The information contained in a supplementary registration augments but does not supersede that contained in the earlier registration.”
Moreover, even if we were to assume arguendo that Raquel’s supplemental registration is a sufficient ground for jurisdiction in an action for infringement of its putative copyright in the performance of the Song, Raquel’s argument is undone by the wording of its complaint. Determination whether an action arises under federal copyright law is made by reference to the statement of the claim in the complaint. See Vestron, Inc. v. Home Box Office, Inc., 839 F.2d 1380, 1381 (9th Cir.1988). “Where there is a fatal flaw on the face of a complaint that purports to assert an infringement action, the suit should be dismissed for lack of subject matter jurisdiction.” Id. at 1382.
Raquel’s complaint is barren of any allegation of an infringement of a copyright in Raquel’s performance of the Song. To the contrary, the complaint alleges infringement of the Song itself, in which, as we here hold, Raquel' has not registered a copyright. In paragraph 13 Raquel states that it “created the music, lyrics and arrangements for an original composition entitled Top Goes the Music’ (hereinafter ‘Plaintiffs Work’).” App. at 14. In paragraph 44, Raquel refers to the use of the “Plaintiffs Work” by EMC in advertising after the end of the three year period of the licensing agreement without permission from Raquel thereby infringing upon its copyright. App. at 20. Raquel states in Paragraph 53 that defendants, by virtue of entering into a “Videoshow Agreement” with Geffen and Nirvana, committed a further act of infringement of “Plaintiffs Work.” App. at 22.
In short, throughout the counts of the complaint, Raquel alleges infringement of “Plaintiffs Work,” which paragraph 13 defines as the music, lyrics, and arrangements of its Song, not its performance. Although the complaint includes amohg its factual allegations the averment that Raquel is the sole proprietor of the Song “and Plaintiffs performance of the song in an audiovisual work,” App. at 18, no count of the complaint alleges a violation of that interest. Hence, even on a charitable reading of the complaint, it is not possible to construe it as alleging an infringement of Raquel’s performance as distinct from *182 its Song. Nor could it amend to so allege, as it has failed to perfect a copyright in its performance.
III.
We conclude that Raquel does not have a registered copyright in either its Song or the performance of its Song that would entitle it to bring suit. Accordingly, we will affirm the District Court’s dismissal of this action for lack of subject matter jurisdiction.

. The complaint, which is not in the appendix, is quoted in the District Court’s first opinion. See Raquel, 955 F.Supp. at 439.

. Raquel argues that the Register of Copyrights could not have been misled by the registration form because a letter from the Copyright Office dated May 14, 1997 shows the Copyright Office understood Raquel’s 1995 registration stated a claim in the “music, lyrics, and arrangement” of the Song. However, this letter to Raquel’s counsel, sent in response to telephone conversations between Raquel’s counsel and the examiner who signed the letter, was dated nearly two years after the registration was filed and does not indicate what the Register of Copyrights would have likely done if all of the relevant facts were presented at the time of the registration. See App. at 226. In fact, the letter is ambivalent as to the nature of Raquel’s claim. In the letter, the examiner states, "If your client owned all rights in the production at the time the original Form PA application was filed to register the song, you may .. which suggests that the Copyright Office was not apprised of the salient fact that Raquel had not authored the commercial or video. Moreover, this document is not one that may be considered in a motion-to-dismiss setting. *178 Although the court may consider, on a motion to dismiss, certain documents that are outside the pleadings, such as the registration form and supplemental registration forms expressly relied on in the complaint, see In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir.1997) ("document integral to or explicitly relied upon in the complaint” may be considered when deciding motion to dismiss)(quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir.1996)), this letter is not such a document as it is wholly extraneous to the pleadings.

. Raquel relies heavily on the fact that the registration form identified the "nature of the authorship” as "all music, lyrics, and arrangements” but we find that this characterization of the nature of the authorship adds only ambiguity rather than clarity to the registration form. We cannot conclude that this ambiguity cures the misstatement as to the nature of the work being registered.

. On a subsequent Rule 60(b)(3) motion, the District Court in Whimsicality, Inc. v. Rubie's Costume Company, 836 F.Supp. 112 (E.D.N.Y.1993), considered an affidavit by the section head of the Copyright Office in which he stated that the "description of the works as a soft sculpture did not and does not constitute a representation to the Copyright Office that the works in question have no useful function [the issue in that case].” Id. at 115. Based on that affidavit, the court reversed its earlier position and held the Copyright Office had not been misled. The letter from a copyright examiner submitted by Raquel in this case as part of its objections to the magistrate judge’s initial report and recommendation, see note 2 supra, is not comparable to the affidavit submitted in Whimsicality.